# CHRISTA M. PANE *v.* CITY OF DANBURY ET AL.
## (SC 17041)

Sullivan, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued November 26, 2003—officially released March 2, 2004

*Thomas W. Bucci*, for the appellant (plaintiff).

*Thomas R. Gerarde*, with whom, on the brief, was *Jay T. DonFranciso*, for the appellees (defendants).

*Victor R. Perpetua*, appellate attorney, and *Mitchell W. Pearlman*, general counsel, filed a brief for the Freedom of Information Commission as amicus curiae.

*Opinion*

SULLIVAN, C. J. This appeal arises from a claim by the plaintiff, Christa M. Pane, an employee of the named defendant, the city of Danbury (city), that the defendant Emanuel Merullo, who was employed by the city as personnel director, improperly permitted a newspaper reporter to review her personnel file pursuant to the Freedom of Information Act (FOIA), General Statutes § 1-200 et seq. The plaintiff brought a five count complaint against the defendants alleging a violation of the public policy embodied in General Statutes § 1-210 (b) (2), formerly § 1-19 (b) (count one); violations of § 1-210 (b) (2) and General Statutes § 1-214 (b),[1] formerly

---

[1] General Statutes § 1-214 (b), formerly §1-20a (b), provides: "Whenever a public agency receives a request to inspect or copy records contained in any of its employees' personnel or medical files and similar files and the agency reasonably believes that the disclosure of such records would legally constitute an invasion of privacy, the agency shall immediately notify in writing (1) each employee concerned, provided such notice shall not be required to be in writing where impractical due to the large number of employees concerned and (2) the collective bargaining representative, if

§ 1-20a (b) (count two); deprivation of the plaintiff's state and federal constitutional right to privacy in violation of 42 U.S.C. § 1983[2] (count three); intentional infliction of emotional harm (count four); and negligent infliction of emotional harm (count five).[3] Thereafter, the trial court granted the defendants' motion for summary judgment as to counts one, two, four and five. With respect to count three, the court granted the defendants' motion for summary judgment as to the state constitutional claims against both defendants and the federal constitutional claim against the city. It denied the motion for summary judgment as to the federal constitutional claim against Merullo. The plaintiff then brought this appeal[4] claiming that the trial court improperly had rendered summary judgment in favor of the city on counts one, two, three and four.[5] We affirm the judgment of the trial court.

The record reveals the following facts and procedural history relevant to this appeal. In May, 1987, the city

any, of each employee concerned. Nothing herein shall require an agency to withhold from disclosure the contents of personnel or medical files and similar files when it does not reasonably believe that such disclosure would legally constitute an invasion of personal privacy."

[2] Section 1983 of title 42 of the United States Code provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

[3] The claim of negligent infliction of emotional distress against the city ultimately was abandoned by the plaintiff.

[4] The plaintiff appealed to the Appellate Court and this court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[5] At the time that this appeal was filed, the plaintiff's claim against Merullo on count three was still pending. On March 20, 2003, the plaintiff withdrew her complaint against Merullo. This appeal does not involve any of the trial court's rulings with respect to that defendant.

hired the plaintiff as a public health inspector. In October, 1995, Merullo received a FOIA request from Elizabeth Hamilton, a newspaper reporter for the Danbury News-Times, to review the plaintiff's personnel file. Thereafter, Merullo informed the city's attorney that he had received the request and they discussed how he should handle it. Merullo then reviewed the plaintiff's personnel file to determine whether it contained any material that was unrelated to matters of legitimate public concern or contained information the disclosure of which would be highly offensive to a reasonable person. After determining to his own satisfaction that it contained no such materials, he made the file available to Hamilton. Merullo did not notify the plaintiff of Hamilton's request or of the release of the file. Subsequently, the Danbury News-Times published two articles written by Hamilton that were critical of the plaintiff. The articles contained information from the plaintiff's personnel file.

On October 7, 1997, the plaintiff filed this action against the defendants. She filed a substitute complaint on February 13, 1998. The defendants filed a motion for summary judgment on February 1, 1999, and on October 18, 2002, the trial court issued its memorandum of decision. The court granted the motion as to counts one and two on the ground that the FOIA does not provide a private cause of action for civil damages. The court granted the motion as to count three against the city on the grounds that: (1) the state constitution does not provide a private cause of action for invasion of privacy; and (2) liability under 42 U.S.C. § 1983 for violations of the federal constitution does not attach in the absence of a widespread discriminatory "custom and usage" by the local governmental body. Finally, it granted the motion as to count four on the ground that Merullo's conduct was not extreme and outrageous.

On appeal, the plaintiff claims that the trial court improperly granted the defendants' motion for summary judgment in favor of the city: (1) on count one of the substitute complaint because the court incorrectly determined that the claim was premised on the proposition that the FOIA provides a private cause of action, when in fact it was premised on the proposition that the city violated public policy; (2) on count two because the FOIA contains an implied private right of action and there is a genuine issue of fact as to whether the city violated the provisions of the act; (3) on count three alleging a violation of 42 U.S.C. § 1983 because Merullo had authority to establish policy with respect to the release of personnel records;[6] and (4) on count four because Merullo's conduct was extreme and outrageous. We conclude that the trial court properly rendered summary judgment in favor of the city on all four counts.

## I

We first address the plaintiff's claim that the trial court improperly rendered summary judgment for the city on count one of the substitute complaint. The trial court granted the motion for summary judgment on counts one and two on the ground that the FOIA does not create a private cause of action. The plaintiff argues that count one was not premised on that proposition, but on the proposition that the plaintiff has a right of action for the violation of the public policy embodied in § 1-210 (b) (2). In other words, the plaintiff argues that count one did not allege statutory violations, but a violation of public policy. We conclude that: (1) the trial court properly determined that count one alleges FOIA violations and that the FOIA does not provide a private right of action; (2) even if the plaintiff attempted

---

[6] The plaintiff does not challenge the trial court's ruling that there is no private cause of action for invasion of privacy under the state constitution.

to allege a violation of public policy in count one, the allegations were legally insufficient; and (3) the plaintiff has not established that governmental immunity from claims of invasion of privacy has been legislatively abrogated. Accordingly, we affirm the ruling of the trial court.

Before addressing the plaintiff's arguments, we first set forth the applicable standard of review of a court's ruling on a motion for summary judgment.[7] "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must

[7] We note that, in the defendants' motion for summary judgment as to counts one and two of the substitute complaint, the defendants essentially claimed that the plaintiff had failed to state a cause of action. Such a claim generally should be raised before the pleadings are closed by way of a motion to strike pursuant to Practice Book § 10-39. See *Burke* v. *Avitabile*, 32 Conn. App. 765, 772, 630 A.2d 624 ("[t]he office of a motion for summary judgment is not to test the legal sufficiency of the complaint, but is to test the presence of contested factual issues"), cert. denied, 228 Conn. 908, 634 A.2d 297 (1993); cf. *Boucher Agency, Inc.* v. *Zimmer*, 160 Conn. 404, 408-409, 279 A.2d 540 (1971) (suggesting that motion for summary judgment may be used to test sufficiency of cause of action). "There is a substantial difference between a motion for summary judgment and a motion to strike. The granting of a defendant's motion for summary judgment puts the plaintiff out of court as it did in this case. See Practice Book § 17-49. The granting of a motion to strike allows the plaintiff to replead his or her case. See Practice Book § 10-44." *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 38 n.3, 727 A.2d 204 (1999) (*Berdon, J.*, dissenting). Because the plaintiff did not challenge the propriety of the defendants' use of a motion for summary judgment to challenge the legal sufficiency of her complaint either in the trial court or before this court, we consider the merits of the defendants' legal sufficiency claim in the procedural context in which it was raised. Cf. *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 32 n.17, 699 A.2d 964 (1997) (treating motion for summary judgment as if it were motion to strike). We emphasize, however, that even if the plaintiff had been permitted to replead count one to clarify that she was alleging a violation of public policy and not a statutory violation, she would still have had to overcome the defense of governmental immunity.

view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book [§ 17-46]." (Internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 397–98, 757 A.2d 1074 (2000). "A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *H.O.R.S.E. of Connecticut, Inc.* v. *Washington,* 258 Conn. 553, 560, 783 A.2d 993 (2001).

In support of her claim, the plaintiff relies on *Perkins* v. *Freedom of Information Commission,* 228 Conn. 158, 635 A.2d 783 (1993). In that case, we undertook to define the phrase "invasion of personal privacy" as used in § 1-210 (b) (2).[8] Id., 169. We concluded that, "[a]s a common-law matter, the privacy concerns embedded in the 'invasion of personal privacy' exemption from the FOIA mirror developing notions of protection for personal privacy that have emerged in a variety of legal contexts since the latter part of the nineteenth century." Id., 170. "Section 652D of the Restatement (Second) of Torts defines a tort action for the invasion of personal privacy as being triggered by public disclosure of any matter that '(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.' By its terms, therefore, the tort action provides a private remedy to implement a public policy that

---

[8] At the time, this statutory section was codified as § 1-19 (b) (2).

closely approximates the public policy embodied in § [1-210 (b) (2)] of the FOIA." *Perkins* v. *Freedom of Information Commission*, supra, 172.

Thus, in *Perkins*, we recognized that the common-law tort action for invasion of personal privacy is grounded in the same public policy interest that the legislature sought to advance by enacting § 1-210 (b) (2), namely, the interest in shielding "entirely private matters . . . [from] the public gaze . . . ." Id., 173. We also recognized that the proper remedy for a violation of that public policy is a tort action for invasion of privacy. See id., 172, 174 (tort standard would supply remedy only for, and § 1-210 (b) (2) of FOIA would bar disclosure only of, information that is highly offensive to ordinary, reasonable person).

Upon a careful reading of the plaintiff's substitute complaint, we conclude that count one is most reasonably read to allege that the defendants violated the provisions of the FOIA, rather than, as the plaintiff claimed, to allege a violation of the *public policy* embodied in § 1-210 (b) (2), in other words, an invasion of her personal privacy. For example, the complaint alleges that the plaintiff has a *statutory* right to privacy under various FOIA provisions, that the defendants violated that right by granting Hamilton access to her personnel file, and that the defendants failed to notify the plaintiff of Hamilton's request to inspect the file in violation of § 1-214 (b). As is more fully discussed in part II of this opinion, the FOIA does not provide a private right of action.

Even if we read the substitute complaint to assert that the alleged FOIA violations constituted an invasion of the plaintiff's privacy per se, the plaintiff could not prevail. As *Perkins* recognized, in order to establish a cause of action for invasion of privacy, a plaintiff must allege that the disclosure of the information " '(a) would

be highly offensive to a reasonable person and (b) is not of legitimate concern to the public.' " Id., 172. The plaintiff's substitute complaint made no such allegations. We are mindful that, "[u]nder modern rules of pleading, slight linguistic ambiguity should not be fatal to a cause of action . . . and that pleadings should be read broadly and realistically, rather than narrowly and technically." (Citation omitted; internal quotation marks omitted.) *Sauerwein* v. *Bell*, 17 Conn. App. 697, 709, 556 A.2d 613, cert. denied, 211 Conn. 804, 559 A.2d 1158 (1989). That does not mean, however, that the trial court is obligated to read into pleadings factual allegations that simply are not there or to substitute a cognizable legal theory that the facts, as pleaded, might conceivably support for the noncognizable theory that was actually pleaded.

Finally, "[t]his court has previously stated that [a] municipality itself was generally immune from liability for its tortious acts at common law . . . . We have also recognized, however, that governmental immunity may be abrogated by statute . . . . Thus, the general rule developed in our case law is that a municipality is immune from liability for [its tortious acts] unless the legislature has enacted a statute abrogating that immunity." (Internal quotation marks omitted.) *Spears* v. *Garcia*, 263 Conn. 22, 28, 818 A.2d 37 (2003). The plaintiff has not cited any statute abrogating governmental immunity to the tort of invasion of privacy.[9]

---

[9] In *Spears* v. *Garcia,* supra, 263 Conn. 29, we concluded that General Statutes § 52-557n allows a plaintiff to bring a direct cause of action for negligence against a political subdivision of the state. Section 52-557n provides in relevant part that "a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ." The plaintiff makes no claim, however, that the tort of invasion of privacy belongs to the class of "negligent acts or omissions" covered by the statute.

We note that there is an exception to the doctrine of qualified immunity from liability as it applies to a municipal *employee,* as distinct from the municipality itself, "where the circumstances make it apparent to the public

We conclude that count one did not state a cause of action and, even if it did, the plaintiff has not cited any statute allowing her to sue the city for invasion of privacy. Accordingly, we conclude that the trial court properly rendered summary judgment in favor of the city.

## II

We next address the plaintiff's claim that the trial court improperly granted the city's motion for summary judgment on count two of the plaintiff's substitute complaint which, unlike count one, expressly is premised on the proposition that the alleged FOIA violations, in and of themselves, gave rise to a private action for money damages. The plaintiff argues that the granting of the motion for summary judgment was improper because § 1-210 (b) (2) contains an implied right of action.[10] We affirm the ruling of the trial court.

The trial court's conclusion that the FOIA does not give rise to a private cause of action was based on its determination that *Perkins* v. *Freedom of Information Commission,* supra, 228 Conn. 175-76, merely gave substantive meaning to the phrase "invasion of personal privacy" as used in § 1-210 (b) (2), and did not recognize

officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . . " (Citation omitted.) *Evon* v. *Andrews,* 211 Conn. 501, 505, 559 A.2d 1131 (1989). That exception does not apply in this case because the claims against Merullo have been withdrawn.

[10] The plaintiff raised this argument for the first time at oral argument before this court. In her brief to this court, the plaintiff did not address the trial court's conclusion that the FOIA does not create a private right of action. Instead, she sidestepped this dispositive issue and argued only that there is a material issue of fact as to whether there were "items in the plaintiff's personnel file that (1) do not pertain to legitimate matters of public concern and (2) are highly offensive to a reasonable person." Whether the facts as pleaded would support the allegation that the city violated the FOIA is irrelevant, however, to our determination of whether the FOIA creates a private cause of action. In any event, the plaintiff did not make those allegations in count two of her complaint.

a private cause of action under that statute. It also concluded that General Statutes § 1-206 (b) (2) provides the exclusive remedy for the denial of a right conferred upon an individual by the FOIA. Section 1-206 (b) (2) provides in relevant part that, "upon the finding that a denial of any right created by the Freedom of Information Act was without reasonable grounds and after the custodian or other official directly responsible for the denial has been given an opportunity to be heard at a hearing conducted in accordance with sections 4-176e to 4-184, inclusive, the commission may, in its discretion, impose against the custodian or other official a civil penalty of not less than twenty dollars nor more than one thousand dollars." The plaintiff now challenges these conclusions on the grounds that the purpose of § 1-210 (b) (2) is to protect the privacy of government employees and, in the absence of a statutory right of action, employees whose privacy rights are violated will be left without a remedy. For the following reasons, we reject this argument.

This court previously has recognized that, "[i]n determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose . . . benefit the statute was enacted . . . ? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" (Internal quotation marks omitted.) *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 249, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct 1106, 137 L. Ed. 2d 308 (1997).

We repeatedly have stated that "[t]he overarching legislative policy of [FOIA] is one that favors the open conduct of government and free public access to government records. . . . The sponsors of the [act] under-

stood the legislation to express the people's sovereignty over the agencies which serve them . . . and this court consistently has interpreted that expression to require diligent protection of the public's right of access to agency proceedings. Our construction of the [act] must be guided by the policy favoring disclosure and exceptions to disclosure must be narrowly construed." (Internal quotation marks omitted.) *Stamford* v. *Freedom of Information Commission*, 241 Conn. 310, 314, 696 A.2d 321 (1997). We also have stated that, "although the act was intended as a general matter to promote openness in government . . . the act itself recognizes competing interests, and the need for some governmental records to remain confidential, at least initially." (Citation omitted.) *Gifford* v. *Freedom of Information Commission*, 227 Conn. 641, 652, 631 A.2d 252 (1993).

Thus, "the class for whose . . . benefit [FOIA] was enacted"; (internal quotation marks omitted) *Napoletano* v. *Cigna Healthcare of Connecticut, Inc.*, supra, 238 Conn. 249; consists of members of the general public who desire information about the conduct of their government. Although the FOIA recognizes certain privacy interests that are in tension with the intended benefit to the public, it cannot be said that the act as a whole was intended to protect those interests. Moreover, the FOIA does not contain any explicit provisions suggesting the existence of a private right of action for the violation of such interests. As the trial court properly determined, nothing in our decision in *Perkins* suggests otherwise. Accordingly, we are persuaded that the legislature intended that the civil penalty provided by § 1-206 (b) (2) would be the exclusive remedy for the violation of a right conferred by the FOIA.

In any event, as we have already suggested, there is a more fundamental reason that the plaintiff may not bring this claim against the city. "[T]he general rule

developed in our case law is that a municipality is immune from liability . . . unless the legislature has enacted a statute abrogating that immunity." (Internal quotation marks omitted.) *Spears* v. *Garcia,* supra, 263 Conn. 22. The plaintiff has pointed to no statutory provision expressly abrogating governmental immunity from claims arising under the FOIA. Accordingly, even if we assume that § 1-210 (b) (2) was intended primarily to advance the privacy interests of government employees within the meaning of *Napoletano,* the plaintiff's claim would be barred by governmental immunity. The fact that this leaves municipal employees who have otherwise meritorious claims against their employers without any remedy at law is simply an unavoidable consequence of the doctrine. Accordingly, we see no reason to disturb the trial court's well reasoned decision.

### III

We next address the plaintiff's claim that the trial court improperly granted summary judgment on count three. The plaintiff argues that the city may be held liable under 42 U.S.C. § 1983 because Merullo had final policy making authority with respect to the release of her personnel records pursuant to the FOIA request. We affirm the trial court's ruling.

"In *Monell* v. *Dept. of Social Services,* 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the United States Supreme Court . . . held that '[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.' '[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

said to represent official policy, inflicts injury that the government as an entity is responsible under § 1983.' [Id.], 694.

"In *Pembaur* v. *Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986), the United States Supreme Court further elaborated on the scope of municipal liability under § 1983. In *Pembaur*, the court considered the'official policy' requirement discussed in *Monell*, and concluded that 'it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.' Id., 480. 'If the decision to adopt [a] particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood.' Id., 481. Further defining the limits of this definition, the court held that 'municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the officials or officials responsible for establishing final policy with respect to the subject matter in question.' Id., 483.

"Noting that the courts of appeals had not applied these principles consistently, the United States Supreme Court, in *St. Louis* v. *Praprotnik*, 485 U.S. 112, 124, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988), 'set out again to clarify the issue that we last addressed in *Pembaur*.' The court stated: 'Two Terms ago, in *Pembaur* . . . we undertook to define more precisely when a decision on a single occasion may be enough to establish an unconstitutional municipal policy. Although the [c]ourt was unable to settle on a general formulation, Justice Brennan's opinion articulated several guiding principles. First, a majority of the [c]ourt agreed that municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, that is, acts which the municipality has

officially sanctioned or ordered. . . . Second, only those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability. . . . Third, whether a particular official has final policymaking authority is a question of state law. . . . Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business.' . . . Id., 123." *Thomas* v. *West Haven*, 249 Conn. 385, 410-12, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 156 L. Ed. 2d 99 (2000).

The plaintiff in the present case alleged in count three of her substitute complaint that "[t]he violation of the [p]laintiff's right of privacy by the [d]efendants, [the city and Merullo], was done under color of state law." In her brief to the trial court on the motion for summary judgment, she argued that "Merullo is admitted to be the [city's] [p]ersonnel [d]irector, an official within the city government . . . . There is no dispute that . . . Merullo acting as an officer of the [city] released the [p]laintiff's entire personnel file to . . . Hamilton. A reasonable inference that can be drawn from these facts is that . . both Merullo and the [city], when making public her personnel file were engaged in conduct that is related to the public authority conferred on these individuals."

The trial court stated in its memorandum of decision that "[n]either party alleges that [the city] has an officially-adopted policy as to how to construe the personal privacy exemption under the FOIA, or that Merullo is responsible for establishing final municipal policy with respect to the exemption." The court concluded that the motion for summary judgment should be granted in favor of the city because Merullo's release of the plaintiff's personnel file "did not represent a final gov-

ernmental policy, or even a governmental 'custom,' with respect to individual privacy rights."

The plaintiff, in her brief to this court, now acknowledges for the first time that a municipality may be held liable under 42 U.S.C. § 1983 for the single action of a government employee *only* when the challenged action was taken by a government official with "final policymaking authority . . . . " (Internal quotation marks omitted.) *St. Louis* v. *Praprotnik*, supra, 485 U.S. 123. She also argues, again for the first time, that Merullo, as the city's personnel director, "possessed the final authority on releasing the plaintiff's personnel file." She provides no evidentiary foundation for this factual claim and no legal authority or argument for the proposition that the authority to make a final decision on releasing a personnel file amounts to "final policymaking authority" within the meaning of *St. Louis* v. *Praprotnik*, supra, 123. See *Jett* v. *Dallas Independent School District*, 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989) (identification of officials whose decisions represent official policy of local governmental unit is legal question to be resolved by trial judge before case is submitted to jury). Accordingly, we conclude that the trial court properly determined, on the basis of the record before it at the time of its ruling, that there was no genuine issue of material fact and that the city was entitled to judgment on count three as a matter of law.

IV

Finally, the plaintiff claims that the trial court improperly granted the motion for summary judgment for the city on count four of her complaint alleging intentional infliction of emotional distress. The trial court granted the motion on the ground that Merullo's conduct was not extreme and outrageous. The plaintiff argues that a reasonable fact finder could find that the failure of Merullo and the city to notify her of Hamilton's request

to review her personnel file to be extreme and outrageous conduct. We affirm the ruling of the trial court on the alternate ground that the claim is barred by governmental immunity.

In *Miner* v. *Cheshire*, 126 F. Sup. 2d 184, 186 (D. Conn. 2000), the plaintiff brought a complaint against the town of Cheshire and a town employee alleging, inter alia, intentional infliction of emotional distress. The District Court concluded that, "[t]o the extent that [the plaintiff] alleges that the [t]own is liable for any intentional infliction of emotional distress by [the town employee] . . . such a claim is precluded by [General Statutes] § 52-557n, which provides, that 'a political subdivision of the state shall not be liable for damages to person or property caused by . . . [a]cts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or *wilful* misconduct . . . .' [General Statutes] § 52-557n (a) (2) (A) . . . . Under Connecticut law, the term 'wilfulness' is synonymous with 'intentional.' *Bhinder* v. *Sun Co.*, 246 Conn. 223, 242 n.14, 717 A.2d 202 (1998) ('While [courts] have attempted to draw definitional [distinctions] between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing.'), quoting *Dubay* v. *Irish*, 207 Conn. 518, 533, 542 A.2d 711 (1988) ["wilful misconduct has been defined as intentional conduct"]; see also *Elliott* v. *City of Waterbury*, 245 Conn. 385, 415, 715 A.2d 27 (1998) (legal concepts of wanton, reckless, wilful, intentional and malicious conduct indistinguishable); *Bauer* v. *Waste Management of Connecticut, Inc.*, 239 Conn. 515, 527, 686 A.2d 481 (1996) ('A wilful act is one done intentionally or with reckless disregard of the consequences of one's conduct.'). Thus, the [t]own may not be liable under [§] 52-557n (a) (2) (A) for [its employee's] alleged intentional infliction of emotional distress." (Emphasis in original.) *Miner* v. *Cheshire*, supra, 194.

We are persuaded by the court's analysis in *Miner*. Accordingly, we conclude that the plaintiff's claim against the city for intentional infliction of emotional distress is barred by governmental immunity.

The judgment is affirmed.

In this opinion the other justices concurred.