# THOMAS O'CONNOR *v.* BOARD OF EDUCATION OF THE TOWN OF WETHERSFIELD
## (AC 24846)

Dranginis, Bishop and West, Js.

Argued February 23—officially released July 5, 2005

*Michael J. Rose*, with whom was *Alexandria L. Voccio* for the appellant-appellee (defendant).

*Leon M. Rosenblatt*, for the appellee-appellant (plaintiff).

*Opinion*

BISHOP, J. The defendant, the board of education of the town of Wethersfield, appeals from the judgment of the trial court rendered after the jury's verdict in favor of the plaintiff, Thomas O'Connor. On appeal, the defendant claims that the judgment should be reversed, arguing that the court improperly failed to set aside the jury verdict because (1) the plaintiff's invasion of privacy claim was barred by governmental immunity, (2) the plaintiff failed to exhaust his administrative remedies and (3) the plaintiff's claims were barred by collateral estoppel.[1] The plaintiff cross appeals from the court's rendering of summary judgment on two counts

---

[1] Because we agree with the defendant as to the first issue, and it is dispositive, we do not address the defendant's other claims.

that alleged, respectively, breach of contract and negligent infliction of emotional distress. We reverse in part the judgment of the trial court on the ground that the court improperly failed to set aside the verdict on the one count on which the plaintiff prevailed. We affirm the court's rendering of summary judgment on the counts alleging breach of contract and negligent infliction of emotional distress.

The following facts and procedural history are relevant to our discussion of the issues on appeal. The plaintiff, a teacher employed by the defendant since 1982, was placed on administrative leave on March 25, 1999, following accusations concerning his classroom behavior. On March 29, 1999, Fred G. Rubin, a cardiologist, sent a letter to the defendant explaining that the plaintiff had a preexisting coronary disease, was complaining of chest pain, and was "very anxious and depressed." Shortly thereafter, Robert B. Buganski, the assistant superintendent for the defendant, requested that the plaintiff provide a certification that he was fit to return to work. On October 25, 1999, Rubin provided a response in which he stated that he was "extremely concerned about [the plaintiff's] severe anxiety . . . ."

Following receipt of Rubin's communication, the defendant determined that the plaintiff was not presently fit to return to the classroom, and on December 7, 1999, Lynne B. Pierson, the superintendent of schools, directed the plaintiff to submit to an independent psychiatric evaluation by Harold I. Schwartz, a physician. In conjunction with the pending evaluation by Schwartz, Pierson asked the plaintiff to sign a release for his medical records, including psychiatric records and records related to a visit to a rehabilitation facility. The plaintiff declined to sign the release because the release permitted Schwartz to reveal the medical records to the defendant without any confidentiality restrictions. Instead, the plaintiff canceled his next scheduled evalu-

ative appointment with Schwartz and, on January 29, 2000, filed an action against the defendant and several individual employees of the defendant in Superior Court, seeking injunctive relief and damages relating to the defendant's request for a release of his medical records.[2] The plaintiff remained on leave of absence and was compensated with accrued sick time until November 1, 2000, when his allotment of sick time expired. The plaintiff continued on unpaid leave until January 28, 2002, when he returned to full-time teaching following an examination by Howard Zonana, a physician, who concluded that the plaintiff did not have any psychiatric disability preventing him from teaching.

Thereafter, the plaintiff instituted the present action, naming only the defendant. The plaintiff filed an amended complaint on June 10, 2003, in which he alleged breach of contract, refusal to pay wages, wrongful constructive discharge, violations of the state constitution, negligent infliction of emotional distress, intentional infliction of emotional distress, tortious invasion of privacy and a violation of General Statutes § 31-51q. In response to the breach of contract claim, the defendant raised several special defenses, including the plaintiff's failure to exhaust administrative remedies. As to the common-law tort claims, the defendant raised governmental immunity as a special defense.

The defendant filed a motion for summary judgment on February 4, 2003, and the plaintiff filed a cross motion for summary judgment on June 10, 2003. The court initially granted the defendant's motion for summary judgment as to the counts alleging breach of contract, refusal to pay wages, constructive discharge and

[2] That initial action was removed subsequently to the United States District Court for the District of Connecticut and was dismissed when the court declined to exercise discretionary jurisdiction. The plaintiff instituted the present action pursuant to General Statutes § 52-592, the accidental failure of suit statute.

violations of the state constitution, and denied the motion as to the remaining counts. Additionally, the court denied the plaintiff's cross motion for summary judgment. Subsequently, the defendant filed a motion for reconsideration of the court's denial of its motion for summary judgment regarding the plaintiff's negligent infliction of emotional distress claim, arguing that the claim was precluded by *Perodeau* v. *Hartford*, 259 Conn. 729, 792 A.2d 752 (2002). After reconsideration, the court agreed and granted the defendant's motion as to the negligent infliction of emotional distress count. Thereafter, the case was tried before the jury on the counts alleging tortious invasion of privacy, intentional infliction of emotional distress and violations of § 31-51q. The jury found in favor of the plaintiff on the invasion of privacy claim, awarding him damages of $162,500. After the court denied the defendant's motions for remittitur or a collateral source reduction, and to set aside the verdict or in arrest of the judgment, judgment was rendered in favor of the plaintiff on October 31, 2003. This appeal followed.

I

The defendant claims that the court improperly failed to set aside the verdict because the plaintiff's claim against the defendant for invasion of privacy was barred by governmental immunity. We agree.

"We begin with a brief discussion of the appropriate standard of review. The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence." (Internal quotation marks omitted.) *Howard* v. *MacDonald*, 270 Conn. 111, 126, 851 A.2d 1142 (2004). "[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . [is] the abuse of discretion standard. . . . In determining whether there has been an

abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . A court is empowered to set aside a jury verdict when, in the court's opinion, the verdict is contrary to the law or unsupported by the evidence." (Internal quotation marks omitted.) *Menon* v. *Dux*, 81 Conn. App. 167, 173, 838 A.2d 1038, cert. denied, 269 Conn. 913, 852 A.2d 743, cert. denied, 543 U.S. 1003, 125 S. Ct. 623, 160 L. Ed. 2d 463 (2004).

Our Supreme Court recently considered a similar claim in *Pane* v. *Danbury*, 267 Conn. 669, 841 A.2d 684 (2004), in which the plaintiff brought an action against the city of Danbury for, inter alia, intentional infliction of emotional distress by one of its employees. As in this case, the only claims before the court were against the city.[3] Id., 677 n.9. Our Supreme Court upheld the trial court's grant of summary judgment in favor of the city as to the plaintiff's count alleging intentional infliction of emotional distress because the city could not be liable for intentional torts committed by its employees under General Statutes § 52-557n (a) (2) (A). *Pane* v. *Danbury*, supra, 685–86.

Section 52-557n (a) (2) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct . . . ." In reviewing whether the plaintiff's claim falls within that statutory subdivision, we must determine whether the allegations of invasion of privacy were comprised of "criminal conduct, fraud, actual malice

[3] The action was brought originally against an employee individually, but the claims against the employee were withdrawn.

or wilful misconduct." Several considerations guide our analysis. First, the plaintiff admits that the invasion of privacy count was a claim sounding in intentional tort. Second, in the complaint, the plaintiff alleged that "[t]he defendant, by itself and through its agents, including Dr. Schwartz, intentionally intruded into the private affairs of the plaintiff." Third, in charging the jury, the court equated the invasion of privacy claim with an intentional tort, stating that "[t]he defendant is liable for invasion of privacy if you [find] that it unlawfully and intentionally intruded upon the plaintiff's seclusion." On the basis of our review of the record, it is clear that the plaintiff alleged a violation of an intentional tort. Because there is no distinction between "intentional" and "wilful" conduct; see, e.g., *Elliott* v. *Waterbury*, 245 Conn. 385, 415, 715 A.2d 27 (1998); *Bauer* v. *Waste Management of Connecticut, Inc.*, 239 Conn. 515, 527, 686 A.2d 481 (1996); *Dubay* v. *Irish*, 207 Conn. 518, 533 n.8, 542 A.2d 711 (1988); the plaintiff's allegations of invasion of privacy amount to "wilful misconduct" under the statute and, therefore, § 52-557n (a) (2) provides the defendant immunity from the allegations. Because the plaintiff's claim was governed by the immunity provided in § 52-557n (a) (2), the defendant was immune from suit for the intentional torts of its employees, regardless of whether the acts were ministerial or discretionary, and the court should have set aside the verdict.[4]

The plaintiff asserts several arguments in an effort to avoid the preclusive effect of § 52-557n (a) (2). He argues that this statutory provision applies only to the intentional torts of employees, but not to the conduct

[4] We also note that the plaintiff has failed to cite any statute that abrogates the immunity set forth in the General Statutes § 52-557n (a) (2). "Thus, the general rule developed in our case law is that a municipality is immune from liability for [its tortious acts] unless the legislature has enacted a statute abrogating that immunity." (Internal quotation marks omitted.) *Pane* v. *Danbury*, supra, 267 Conn. 677.

of municipalities. That argument lacks merit. It is axiomatic that a government subdivision can act only through natural persons as its agents or employees. See *Shay* v. *Rossi*, 253 Conn. 134, 168, 749 A.2d 1147 (2000), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003). The plaintiff also contends that municipalities are not immune from claims for intentional torts because of the common-law rule that "[g]overnmental immunity does not exempt from liability for a personal injury resulting from a wanton act or a nuisance." *Pope* v. *New Haven*, 91 Conn. 79, 88, 99 A. 51 (1916) (*Wheeler, J.*, dissenting); see also *Hoffman* v. *Bristol*, 113 Conn. 386, 391, 155 A. 499 (1931). That argument also fails because although § 52-557n codified portions of the law on immunity available to municipalities, the statute overrode the common-law rule by providing immunity for wilful and wanton acts.[5] Thus, we look to the statute for guidance and not to prior decisional law that was based on then contemporary common law. Therefore, that argument by the plaintiff, too, is unavailing.

The plaintiff finally claims that the defendant waived the special defense of governmental immunity by not proving immunity at trial. That argument also is unpersuasive. On the basis of the allegations in the plaintiff's complaint, there is no dispute that the defendant is a political subdivision. Additionally, in the complaint, the plaintiff alleged that the defendant committed an intentional tort. Because the municipal status of the defendant was undisputed and the protection of § 52-557n (a) (2) is available to a municipal defendant as a matter of law, the evidence at trial was adequate for the court's legal intervention.

[5] It also is noteworthy that the statute codified part of the common-law rule by exempting municipalities from immunity from nuisance claims in General Statutes § 52-557n (a) (1) (C).

## II

We next consider the plaintiff's claims on cross appeal. The plaintiff alleges that the court improperly rendered summary judgment on two counts. "The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *McManus* v. *Sweeney*, 78 Conn. App. 327, 330, 827 A.2d 708 (2003). "The test is whether a party would be entitled to a directed verdict on the same facts. . . . A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Internal quotation marks omitted.) *Appleton* v. *Board of Education*, 53 Conn. App. 252, 256, 730 A.2d 88 (1999), rev'd in part on other grounds, 254 Conn. 205, 757 A.2d 1059 (2000).

### A

The plaintiff first claims that the court improperly rendered summary judgment in favor of the defendant on the breach of contract claim. We disagree.

In his complaint, the plaintiff alleged that despite his continued contract of employment pursuant to the Teacher Tenure Act (act), General Statutes § 10-151, the defendant breached the plaintiff's employment contract by failing to pay him wages from November 5, 1999, until January 28, 2002. The court rendered summary

judgment on that count because an arbitrator had held that the defendant had not breached the collective bargaining agreement by withholding the wages.[6]

The plaintiff contends that the court erred by "confusing the plaintiff's individual contract of employment with his union's collective bargaining agreement." While acknowledging that the collective bargaining agreement covered several areas of his employment, including the payment of wages and sick time allotments, and included an arbitration clause, the plaintiff nevertheless argues that § 10-151 gives him a contractual right to be paid a salary when he is on leave. He argues that by reason of § 10-151, his contract of employment continues from year to year and, therefore, the defendant's failure to pay him while he was on leave constituted a breach of contract. We are unpersuaded.

Section 10-151 mandates continued employment for a tenured teacher unless one of the statutory grounds for termination of employment has been found. The statute is silent about continuing pay during a period of administrative leave. Given that the plaintiff's employment continued throughout his leave and that his employment was not terminated, his rights under the statute were not implicated. See *Tucker* v. *Board of Education*, 4 Conn. App. 87, 90, 492 A.2d 839 (1985) ("plaintiff did not have the right to appeal [under § 10-151] from a suspension of employment"). In support of his claim, the plaintiff has cited no germane provisions of § 10-151 or any supporting decisional law extending the statute's reach to the payment of a tenured teacher during a period of administrative leave. In the absence of clear legislative direction or a decisional gloss in support of the plaintiff's argument, we decline the invitation to extend the act's protections to afford to ten-

---

[6] On appeal to this court, the plaintiff has not requested review of the arbitration decision.

ured teachers the right to pay during periods of mandated leave.

In sum, we conclude that the court properly rendered summary judgment in favor of the defendant on the plaintiff's count that alleged breach of contract.

B

The plaintiff next argues that the court improperly rendered summary judgment in favor of the defendant on his claim of negligent infliction of emotional distress. We disagree.

Resolution of that issue is governed by *Perodeau*, in which our Supreme Court held "that an individual municipal employee may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment." *Perodeau* v. *Hartford*, supra, 259 Conn. 762–63. In this case, the claim of negligent infliction of emotional distress arose out of circumstances surrounding the defendant's placement of the plaintiff on sick leave and not in conjunction with the termination of his employment.

The plaintiff seeks to evade the application of *Perodeau* on the basis of his argument that *Perodeau* involved liability against an individual and not an employer. We agree with the conclusion of the trial court, as set forth in its well reasoned memorandum of decision, that *Perodeau* applies regardless of whether the defendant is an individual or a government entity. The policy rationale of *Perodeau* focuses on the importance of preserving stability in the workplace and not on the identity or status of the defendant. Contrary to the plaintiff's argument, we find no merit in the distinction he urges us to adopt. Therefore, in accordance with the holding in *Perodeau*, the court properly dis-

missed the plaintiff's claim for negligent infliction of emotional distress because the claim did not arise out of the termination of the plaintiff's employment.

On the defendant's appeal, the judgment is reversed and the case is remanded with direction to set aside the verdict regarding the invasion of privacy claim and to render judgment in favor of the defendant. On the plaintiff's cross appeal, the judgment is affirmed.

In this opinion the other judges concurred.