Kathleen A. **NANOS**, Plaintiff,

v.

**CITY OF STAMFORD**, Defendant.

No. 3:07CV01730(DJS).

United States District Court,
D. Connecticut.

April 22, 2009.

Alfred J. Smith, Jr., Stamford, CT, for Plaintiff.

Michael Steven Toma, City of Stamford, Law Department, Stamford, CT, for Defendant.

### MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

This is an action for damages arising in connection with the termination of the plaintiff, Kathleen A. Nanos ("Nanos"), from her position with the defendant, the City of Stamford ("the City"). Nanos alleges that the City terminated her employment in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("the ADA").[1] Nanos further alleges state law claims of wrongful termination and intentional infliction of

emotional distress. The City has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth herein, the City's motion for summary judgment (**dkt. # 13**) is **GRANTED.**

### I. LOCAL RULE STATEMENTS

Before setting forth the background facts of this case, the Court notes that Nanos has failed to comply fully with Rule 56 of the Local Civil Rules of the United States District Court for the District of Connecticut. The Rule requires the party opposing summary judgment to file

a document entitled 'Local Rule 56(a)2 Statement,' which states in separately numbered paragraphs meeting the requirements of Local Rule 56(a)3 and corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied. The Local Rule 56(a)2 Statement must also include in a separate section entitled 'Disputed Issues of Material Fact' a list of each issue of material fact as to which it is contended there is a genuine issue to be tried.

D. Conn. L. Civ. R. 56(a)(2). In addition, the Rule provides that each statement of a material fact and each denial

must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. The affidavits, deposition testimony, responses to discovery requests, or other documents containing such evidence shall be filed and served with the Local Rule 56(a)1 and 2 Statements .... [F]ailure to provide specific citations to evidence in the record as required by

---

1. Nanos had initiated this action in the Connecticut Superior Court. The City removed the case to federal court on November 11, 2007.

this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted in accordance with Rule 56(a)1 . . . .

D. Conn. L. Civ. R. 56(a)(3).

 The Court points out that, in her Local Rule Statement, Nanos has admitted to eighteen of the City's twenty-six factual allegations, meaning that the facts of this case are largely uncontested. With regard to Nanos's responses to Paragraphs 8, 13, 15, 17, 19, 20, and 26 of the City's Local Rule 56(a)1 Statement, the Court finds that Nanos does not actually deny the City's factual allegations, but simply adds commentary or analysis not related to the existence or non-existence of the facts alleged by the City. Such commentary or analysis is not appropriate when responding to a Local Rule Statement, and is best left to the discussion in Nanos's memorandum of law. Therefore, the Court deems admitted Paragraphs 8, 13, 15, 17, 19, 20, and 26 of the City's Local Rule 56(a)1 Statement.[2] Finally, although Nanos does submit her own "Statements of Fact" in which she alleges a number of facts, she does so without complying with Local rule 56(a)3 insofar as she has not provided any citations to specific evidence. In light of Nanos's inability to comply with Local Rule 56, the Court deems admitted those facts alleged by the City's that are properly supported by the evidence.

## II. FACTS

Nanos began her employment with the City's Police Department in September 1995. She worked as an Office Support Specialist, a unionized position, in the Police Department's records room, where she answered phones and served members of the public who came to the records department. Nanos is an alcoholic.

In February, March, and April 2004, Nanos received communications from her supervisors regarding her use of sick and vacation time. The communications reflected that Nanos had used all of the sick and vacation days she had accrued during her employment with the City.

A year later, in February 2005, Nanos was arrested for breach of peace for conduct while she was under the influence of alcohol, and she was subsequently transported to Stamford Hospital by the police. This resulted in her signing a Last Chance Agreement ("the Agreement") with the City. The Agreement acknowledged Nanos's "years of service," but also noted her "habitual absenteeism" and "demonstrated abuse of alcohol which impacts her attendance and performance." (Def.'s Ex. E.) Pursuant to the terms of the Agreement, "any violation of departmental policy or other inappropriate conduct or habitual absence will subject [Nanos] to immediate termination." (*Id.*) In addition, under the Agreement, Nanos was to provide doctor's notes to support any claims of sick time. (*Id.*)

Nanos subsequently was the subject of police incident reports in July 2005 and October 2005; however, these incidents, although involving situations in which Nanos was under the influence of alcohol, did not result in arrest or discipline. Thereafter, on December 14, 2005, Nanos was the subject of another police incident report arising out of her disorderly public conduct that occurred while she was under the influence of alcohol. This resulted in a ten-day suspension. In the letter ordering the suspension, the Chief of Police, Brent

---

**2.** The Court further points out that Nanos's denial of Paragraphs 18 of the City's Local Rule 56(a)(1) Statement also does not contain any citation to the record. The Court shall not deem admitted Paragraph 18, however, because it essentially calls for a legal conclusion, i.e., whether an agreement was breached or not.

Larrabee ("Larrabee") noted that, although Nanos had called in sick on December 14, 2005, a police officer observed her to be intoxicated in public at 11 a.m. (Def.'s Ex. I.) The letter also recited that Nanos was in violation for failure to report for duty; repeated violations of police rules, regulations, or directives; and consuming alcohol "to the extent that it results in impairment, intoxication, obnoxious, or offensive behavior which discredits [her] or the Department, or that renders [her] unfit to report for their next regular tour of duty." (*Id.*)

On January 2, 2006, Nanos was the subject of three more police reports arising out of conduct that occurred while she was under the influence of alcohol. Then, from January 6, 2006 to January 9, 2006 Nanos was absent from work. She did, however, produce a doctor's note for these absences.

Thereafter, Nanos used sick days to miss work on January 25, 2006 and January 30, 2006. She submitted an excuse slip that recited that she had to care for her husband, who apparently was involved in a car accident. (Def.'s Ex. P.) According to Larrabee, however, Nanos had represented that her husband had fallen down some stairs. (Def.'s Ex. X ¶ 20.) Larrabee also stated that he was not convinced that Nanos needed entire days off; therefore, he regarded the absences as a part of her continual absenteeism, and thus violations of the Agreement. (Def.'s Ex. X. ¶¶ 21, 23.)

The City terminated Nanos's employment on February 1, 2006. Larrabee's letter to Nanos confirming her termination recited that she "continued to demonstrate an unwillingness or inability to report to work on a consistent basis." (Def.'s Ex. S.) It noted that since her return from suspension, Nanos had "been absent from work on at least four additional occasions, in which [Nanos] used three (3) sick days

and one (1) unscheduled vacation day." (*Id.*)

After her termination, in late 2006, Nanos found temporary part-time, seasonal work at Lord and Taylor, but has not been employed since. (Def.'s Ex. V at 7:17–24.) On November 26, 2006, the Social Security Administration found that Nanos had become disabled on February 1, 2006, and was entitled to benefits from July 2006. (*Id.* at 61:8–62:7.)

## III. DISCUSSION

The City seeks summary judgment on all of Nanos's claims, including her employment discrimination claim under the ADA, arguing that these claims fail as a matter of law. Nanos, for her part, argues that her allegations are sufficient to survive summary judgment. The Court shall discuss the parties' arguments seriatim.

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group, Inc. v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus.*

*Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine " 'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

### B. THE ADA

■ The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees...." 42 U.S.C. § 12112(a). Normally, "ADA employment discrimination claims are subject to the familiar burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973): A plaintiff must establish a *prima facie* case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir.2006).

■ The Court believes, however, that an extensive analysis under this burden-shifting framework is unnecessary here. Generally, the ADA considers conduct resulting from a disability to be part of the disability itself, meaning that such conduct cannot constitute a separate basis for termination. Nonetheless, the ADA specifically authorizes termination for misconduct that is caused by a disability in cases involving alcoholism and illegal drug use; under the ADA, an employer "may hold an employee who engages in the illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee...." 42 U.S.C. § 12114(c)(4); *see Altman v. New York City Health & Hosp. Corp.*, 100 F.3d 1054, 1060 (2d Cir.1996). In addition, "[p]ursuant to 42 U.S.C. § 12114(c)(4), employers need not make any reasonable accommodations for employees who are illegal drug users and alcoholics .... in marked contrast to all other disabilities, where the ADA does require that the employer extend reasonable accommodations." *Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1086 (10th Cir.1997).

■ Nanos argues that "the nature and symptoms of alcoholism follow closely with [her] behavior ... during non-working hours, and in work attendance problems[,]" and that her disability under the ADA, namely, her alcoholism, substantially limited her in the "major life activity" of "maintain[ing] regular attendance in ... [the] perform[ance] [of] the duties of her position with [the City]." (Dkt. # 16, pp. 2, 4.) There is no dispute that alcoholism may constitute an impairment for the purposes of the ADA, or that Nanos suffers from alcoholism. In addition, under the ADA, the disability must substantially limit a "major life activity," *see* 42 U.S.C. § 12102(1), which includes the activity of "working," *see* 29 C.F.R. § 1630.2(i). That being said, as noted above, the ADA expressly precludes alcoholics from recovery in circumstances where their alcoholism prevented them from performing their job

duties to the same standards as non-alcoholics, nor does it protect alcoholics from termination for misconduct caused by alcoholism. *See Vandenbroek v. PSEG Power Conn., L.L.C.,* Civil Action No. 3:07–cv–869 (JCH), 2009 WL 650392, at *5–6 (D.Conn. Mar. 10, 2009).

■ Here, for the sake of argument, the Court shall accept as true Nanos's contention that the City terminated her employment not because she violated the Agreement, but because her alcoholism prevented her from maintaining regular attendance at work. The City has provided uncontested evidence that regular attendance is a part of regular job performance. The City's Charter provides that habitual absence is grounds for discipline. (Def.'s Ex. T, Ex. Z ¶ 5.) The Police Department Rules and Regulations require members to report for duty at the time and place required. (Def.'s Ex. AA.) The heavy workload of the Records Room required regular and reliable attendance by all its employees. (Def.'s Ex. Y ¶ 14.) Nanos has not offered any evidence showing that regular attendance was not a requirement of her job. Thus, in requiring regular attendance from Nanos despite her alcoholism, the City was holding her to the "same standards for employment or job performance and behavior" as other City employees, meaning that she cannot sustain a claim under the ADA. In short, Nanos's ADA claim fails as a matter of law. Consequently, with regard to Nanos's ADA claim, the City's motion for summary judgment is granted.[3]

### C. STATE LAW CLAIMS

Nanos also seeks damages for emotional distress and wrongful termination. The City seeks summary judgment on those claims as well. The Court notes that once it has disposed of all federal claims, it can decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c) if it determines that exercising supplemental jurisdiction would not promote economy, convenience, fairness, and comity. In this case, the interests of judicial economy weigh in favor of adjudication, as Nanos's claims are without merit.

#### 1. Intentional Infliction of Emotional Distress

■ Nanos claims that the City should be liable for intentional infliction of emotional distress. The City argues that governmental immunity prevents liability even if a member of the police department did commit such a tort. Nanos presents a novel argument for her intentional infliction of emotional distress claim. She points to a recent federal case from the Northern District of Illinois, where the district court, in finding that Congress did not intend to create individual liability for only private employers under the FMLA, held that a Chief of Police could be personally liable under the Family and Medical Leave Act ("the FMLA"). *See Rasic v. City of Northlake,* 563 F.Supp.2d 885 (N.D.Ill.2008). Nanos then asks that this Court use "this reasoning, and *[r]espondeant [s]uperior* " to impute alleged be-

---

**3.** In the usual ADA analysis, a plaintiff, in establishing a prima facie case, must show, *inter alia,* that she was otherwise qualified for her job. *Sista,* 445 F.3d at 169. Under the ADA, an individual is qualified for a job if she can perform its essential functions. *Shannon v. New York City Transit Auth.,* 332 F.3d 95, 99–100 (2d Cir.2003). "As [a] general rule, some degree of regular, predictable attendance is fundamental to most jobs, . . . and an employee who cannot get to work does not satisfy the essential requirements of her employment." *Colby v. Pye & Hogan, L.L.C.,* 602 F.Supp.2d 365, 371 (D.Conn.2009) (internal quotation marks omitted). Nanos essentially admits that she could not maintain regular attendance at work. Thus, even if the ADA did not explicitly disallow the type of claim Nanos has brought here, her claim would still fail under the normal ADA analysis.

havior of Larrabee, the Chief of Police, who is not named as a defendant, to the City of Stamford. Nanos essentially argues that if Larrabee could be found liable for intentional infliction of emotional distress, the City could be found liable as well.

Nanos does not inform the Court of how there is any nexus between the FMLA (or Congress's intent regarding scope of liability for the FMLA) and the Connecticut common-law tort for intentional infliction of emotional distress, nor does she address how Congress's intent regarding the FMLA could abrogate a statutory governmental immunity established by the Connecticut legislature on an issue of Connecticut law. Nanos instead argues that because she was terminated while caring for her husband, *Rasic* has some applicability. The Court rejects this argument. Even if Nanos had alleged a claim under the FMLA, which she did not, the standards of an FMLA claim bear no relation to the standards for a common-law intentional infliction of emotional distress claim.

■■■ Moreover, Connecticut law is clear with regard to municipal liability for the intentional torts of its employees: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice, or wilful misconduct...." Conn. Gen.Stat. § 52–557n(a)(2)(A). The Connecticut Supreme Court has construed "wilful misconduct" to be synonymous with "intentional conduct." *See Pane v. City of Danbury*, 267 Conn. 669, 685, 841 A.2d 684 (2004). Therefore, a municipality cannot be held liable for the intentional conduct of its employees under Conn. Gen.Stat. § 52–557n; in fact, the Connecticut Supreme Court specifically held in *Pane* that, under Conn. Gen.Stat. § 52–557n, a municipality cannot be held liable for its employees' intentional infliction of emotional distress. *See Pane*, 267 Conn. at 685–86, 841 A.2d 684. In the face of clear precedent on point, Nanos cannot prevail on her claim for intentional infliction of emotional distress against the City. Consequently, with regard to Nanos's intentional infliction of emotional distress claim, the City's motion for summary judgment is granted.[4]

### 2. Wrongful Termination

■■■ The City also seeks summary judgment regarding Nanos's claim of wrongful termination. Under Connecticut

---

4. Even if Nanos could impute Larrabee's conduct to the City, her claim would fail as a matter of law. In order to recover damages for intentional infliction of emotional distress, [i]t must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe. *Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986), *superseded by statute on other grounds as recognized in Chadha v. Charlotte Hungerford Hosp.*, 272 Conn. 776, 865 A.2d 1163 (2005). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210, 757 A.2d 1059 (2000). " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.* at 210–11, 757 A.2d 1059 (citing 1 Restatement (Second) of Torts § 46, comment (d) (1965)). Nanos's claim falls far short of this standard. There is nothing in the record to demonstrate that Larrabee acted in a way that was "atrocious" and "utterly intolerable in a civilized community."

law, an at-will employee can sue her employer for discharge "if the former employee can prove a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 475, 427 A.2d 385 (Conn.1980) (emphasis in original). If, however, a relevant state or federal law contains a private right of action which serves to protect the public policy allegedly violated, a wrongful discharge claim will fail. *Burnham v. Karl & Gelb, P.C.,* 252 Conn. 153, 159–60, 745 A.2d 178 (2000). For employment discrimination cases, "courts in Connecticut have also concluded that the . . . ADA contain[s] private remedies sufficient to preclude wrongful discharge claims." *Honeck v. Nicolock Paving Stones of New England, LLC,* No. Civ.3:04CV1577 (JBA), 2005 WL 1388736 at *2 (D.Conn. June 10, 2005) (collecting cases).

Nanos argues that her wrongful discharge claim is proper because she was without remedy in that she waived her collective-bargaining protections in the Agreement, and that the City's actions violated public policy by removing her collective bargaining rights and discriminating against her in violation of the ADA and the FMLA. This argument is without merit. If Nanos believed that the City had violated the collective bargaining agreement, the ADA, or the FMLA, she was free to file a lawsuit for such claims. Nanos cannot substitute a general "wrongful discharge" claim for specific claims allowed by law. "The wrongful discharge cause of action is not intended to be a catch-all for those who either procedurally or on the merits fail to establish a claim under existing discrimination statutes." *Kilduff v. Cosential, Inc.,* 289 F.Supp.2d 12, 18 (D.Conn. 2003). Nanos failed to allege breach of contract or FMLA claims despite the allowance of such claims under the law. She may not bring a "wrongful discharge" claim to remedy this.

In addition, if Nanos had been wrongfully terminated due to a disability, her remedy would lie with the ADA, and any wrongful termination claim would be precluded "by virtue of the existence of a statutory remedy." *Burnham,* 252 Conn. at 161–62, 745 A.2d 178. She did, in fact, bring an ADA claim in this case, which the Court has found to fail as a matter of law. This finding, however, does not mean that Nanos may still bring a wrongful discharge claim. "[T]he common-law discharge claim is not a valid theory of recovery that the plaintiff could 'fall back' on should h[er] . . . ADA claim[ ] fail[.]" *Honeck,* 2005 WL 1388736, at *3. Again, the existence of a statutory remedy, here the ADA, precluded her from bringing the wrongful discharge claim. As a result, Nanos's wrongful discharge claim fails as a matter of law. Consequently, with regard to Nanos's wrongful discharge claim, the City's motion for summary judgment is granted.

## IV. CONCLUSION

For the foregoing reasons, the City's motion for summary judgment **(dkt # 13)** is **GRANTED.** Judgment in favor of the Defendant, the City of Stamford, shall enter on all counts of the complaint. The clerk shall close this file.