GARY KRASSNER *v.* CITY OF ANSONIA
(AC 27549)

Bishop, DiPentima and Harper, Js.

Argued January 4—officially released March 27, 2007

*Francis A. Teodosio*, with whom, on the brief, was *Paul Bourdoulous*, for the appellant (defendant).

*Michael S. Hillis*, with whom was *Jennifer R. Barone*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. The defendant, the city of Ansonia, appeals from the judgment of the trial court vacating the arbitration award terminating the employment of the plaintiff, Gary Krassner, with the Ansonia police department (department). On appeal, the defendant claims that the court improperly determined that the arbitrators were guilty of misconduct that deprived the plaintiff of a fair hearing. We reverse the judgment of the trial court.

The plaintiff was employed as a police officer with the department from 1989 until his employment was terminated on November 19, 2003. In January, 2002, the plaintiff signed a modified last chance agreement with the department in which he admitted to past abuse of OxyContin, agreed to participate in an employee assistance program and further agreed that any drug use within one year could constitute cause for immediate dismissal.

During the spring of 2003, after the plaintiff completed the last chance employee assistance program, an internal affairs investigation was conducted due to allegations that he was using drugs, that he was in debt and that he was being inattentive to his duties as a canine officer. Subsequently, the plaintiff was placed on administrative leave for two alleged cases of insubordination and for allegedly violating the following subsections of the police duty manual: 2.3.2, conduct

unbecoming a police officer; 2.3.8, use of drugs; 2.1.16, attention to duty; 4.3.7, use of telephone; 2.3.10, improper associations; 2.3.22, duty time limited to police work; and 2.1.6, truthfulness. Thereafter, the Ansonia board of police commissioners found just cause to terminate the plaintiff's employment on November 19, 2003.

Pursuant to the collective bargaining agreement between the defendant and the Connecticut Independent Police Union, Local 13, the matter proceeded to arbitration before the department of labor's board of mediation and arbitration. A three member panel of arbitrators (panel) convened to determine "[w]hether . . . the city of Ansonia board of police commissioners had just cause to terminate the employment of the [plaintiff], Officer Gary Krassner? If not, what should the remedy be?"

At the hearing before the panel, the defendant presented testimony from Chief of Police Kevin J. Hale and Lieutenant Floyd Morey. The panel admitted, over the plaintiff's objection, unsworn witness statements from Joseph Marino and Franco Frezza, who claimed that they had knowledge of the plaintiff's alleged drug abuse, and from Cathy Pompa, who claimed that she had knowledge of the plaintiff's alleged abuse of his position. The panel also admitted, over objection, a witness statement from John Mayers, given while he was under arrest and allegedly sworn to by Morey, claiming that he had sold OxyContin to the plaintiff as recently and frequently as twice per week in early May, 2003.

Following the hearing, on February 2, 2005, the panel issued its award, with one member dissenting, determining that the plaintiff's dismissal was for just cause. The panel concluded as follows: "[I]t was apparent from the totality of the record that the vast references to the [plaintiff] involved finances, suggesting

financial problems. Given his prior admission to be addicted to OxyContin, the panel further found that his association with drug users did not suggest these telephone calls and visits were of a social nature. These, too, were financial in nature. Although the statements were not sworn, they were considered to have merit. To discount this testimony simply because these statements were made by drug users is as credible as [the plaintiff's] claim [that] he had no knowledge of any drug use of those who spoke out against him, especially since he arrested one on drug charges. [The plaintiff] offered no credible reasons for these associations, which could not have been offered before the board of police commissioners as well as before this [arbitration] panel. [The plaintiff's] selective memory at the hearing was given great weight. His lack of veracity was significant in the [arbitration] panel's decision. . . . [T]he preponderance of the evidence, when taken in toto, supported [the defendant's] claim that it had just cause to terminate [the plaintiff's employment]."

On March 7, 2005, the plaintiff filed an application to vacate the award. The plaintiff claimed that (1) the panel had engaged in misconduct pursuant to General Statutes § 52-418 (a) (3) in allowing unsworn statements of witnesses into evidence and that he was denied a fundamental procedural right of cross-examination as to these statements, (2) the panel had, by its actions, altered the terms of the collective bargaining agreement, and (3) the panel's decision violated public policy because it adversely affected a mental disability of the plaintiff and his workers' compensation rights. The defendant, in turn, filed a motion to confirm the panel's award.

By decision filed March 3, 2006, the court concluded that the unsworn witness statements, properly objected to by the plaintiff, "were heavily used to terminate [the plaintiff's employment and that such a basis] can hardly

be said to have provided the plaintiff with a full and fair hearing." Because it determined that the panel's evidentiary rulings contravened § 52-418 (a) (3), the court did not address the plaintiff's claims that the panel attempted to amend or to alter the collective bargaining agreement and that the award violated public policy. The court granted the plaintiff's application to vacate the arbitration award, denied the defendant's motion to confirm it, and remanded the matter to the board of mediation and arbitration for another hearing before a different arbitration panel pursuant to § 52-418 (b). This appeal followed.

On appeal, the defendant claims that the court improperly determined that the panel was guilty of misconduct pursuant to § 52-418 (a) (3) by admitting and giving weight to unsworn witness statements and that the court therefore improperly vacated the award. We agree.

We begin with a restatement of the principles that guide our review of arbitration awards as set forth by our Supreme Court in *Bridgeport* v. *Kasper Group, Inc.*, 278 Conn. 466, 899 A.2d 523 (2006). "This court has for many years wholeheartedly endorsed arbitration as an effective alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation. . . . When arbitration is created by contract, we recognize that its autonomy can only be preserved by minimal judicial intervention. . . . Because the parties themselves, by virtue of the submission, frame the issues to be resolved and define the scope of the arbitrator's powers, the parties are generally bound by the resulting award. . . . Since the parties consent to arbitration, and have full control over the issues to be arbitrated, a court will make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings. . . . The party challenging the award bears the burden of

producing evidence sufficient to invalidate or avoid it. . . . [W]e have . . . recognized three grounds for vacating an [arbitrator's] award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418. . . .

"[A]rbitrators are accorded substantial discretion in determining the admissibility of evidence, particularly in the case of an unrestricted submission, which relieve[s] the arbitrators of the obligation to follow strict rules of law and evidence in reaching their decision. . . . Indeed, it is within the broad discretion of arbitrators to decide whether additional evidence is required or would merely prolong the proceedings unnecessarily. . . . This relaxation of strict evidentiary rules is both necessary and desirable because arbitration is an informal proceeding designed, in part, to avoid the complexities of litigation. Moreover, arbitrators generally are laypersons who bring to these proceedings their technical expertise and professional skills, but who are not expected to have extensive knowledge of substantive law or the subtleties of evidentiary rules. . . .

"A trial court's decision to vacate an arbitrator's award under § 52-418 involves questions of law and, thus, we review them de novo. . . . . To establish that an evidentiary ruling, or lack thereof, rises to the level of misconduct prohibited by § 52-418 (a) (3) requires more than a showing that an arbitrator committed an error of law. . . . Rather, a party challenging an arbitration award on the ground that the arbitrator [made an improper evidentiary ruling] must prove that, by virtue of an evidentiary ruling, he was in fact deprived of a full and fair hearing before the arbitration panel. . . .

"Additionally, to vacate an arbitrator's award on the ground of misconduct under § 52-418 (a) (3), the moving

party must establish that it was substantially prejudiced by the improper ruling. . . . This requirement that the moving party establish substantial prejudice is consistent with the showing that this court requires to order a new trial when a trial court makes an improper evidentiary ruling in a civil trial. . . . In such cases, a new trial will be ordered only when the improper evidentiary ruling [likely] would [have] affect[ed] the result." (Citations omitted; internal quotation marks omitted.) Id., 473–77.

Section 31-91-37 of the Regulations of Connecticut State Agencies provides, inter alia, that "[t]he panel members shall be the judge of the relevance and materiality of the evidence offered. Conformity to legal rules of evidence shall not be necessary. . . . Documents, records and other pertinent data, when offered by either party, may be received in evidence by the panel. . . ." The defendant contends that this relaxed standard of evidentiary rules for administrative proceedings supports the panel's admission and consideration of unsworn written statements. We disagree. Rather, we believe that § 31-91-37 must be read in conjunction with other applicable regulations, particularly § 31-91-39 (a), which provides: "The panel members may receive and consider the evidence of witnesses by affidavit, but shall only give it such weight as deemed proper after consideration of any objection made to its admission." An affidavit is defined as "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths." Black's Law Dictionary (7th Ed. 1999). The unsworn statements admitted by the panel do not fit this definition. Although arbitrators are given broad discretion to consider the evidence presented to them, to allow the admission of unsworn written statements would render § 31-91-39 meaningless. Because the witness statements were not sworn to before an officer authorized to administer

oaths, they did not meet the requirements of an affidavit, and their admission, therefore, was in violation of § 31-91-39 (a).

Our inquiry, however, does not end here. As noted, an improper evidentiary ruling by an arbitration panel does not necessarily constitute arbitral misconduct. "The concept of arbitral misconduct does not lend itself to a precise definition but is, instead, best illustrated by example. . . . Among the actions that have been found to constitute such misconduct on the part of an arbitrator as would warrant vacating an arbitration award are the following: participation in ex parte communications with a party or a witness, without the knowledge or consent of the other party . . . ex parte receipt of evidence as to a material fact, without notice to a party . . . holding hearings or conducting deliberations in the absence of a member of an arbitration panel, or rendering an award without consulting a panel member . . . undertaking an independent investigation into a material matter after the close of hearings and without notice to the parties . . . and accepting gifts or other hospitality from a party during the proceedings. . . . An award may likewise be set aside on the basis of procedural error by an arbitration panel if, for instance, the panel arbitrarily denies a reasonable request for postponement of a hearing . . . or commits an egregious evidentiary error, such as refusing to hear material evidence or precluding a party's efforts to develop a full record. . . . Though not exhaustive, these examples of arbitral misconduct delineate the broad contours of conduct that is unacceptable and prohibited under § 52-418 (a) (3). The presumptive validity of consensual arbitration awards depends upon the underlying integrity of the arbitration process. When that integrity is tainted either by actual impropriety or the appearance of impropriety, the arbitration award

cannot be permitted to stand." (Citations omitted; internal quotation marks omitted.) *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 146–48, 523 A.2d 1271 (1987). Thus, to establish that an evidentiary ruling rises to the level of misconduct prohibited by § 52-418 (a) (3), a claimant must demonstrate more than that an arbitrator committed an error of law. Rather, a party challenging an arbitration award on the ground that the arbitrator made an improper evidentiary ruling must prove that, by virtue of that evidentiary ruling, he was in fact deprived of a full and fair hearing before the arbitration panel. See id., 149.

With those principles in mind, we turn to the case at hand. Although the panel improperly admitted unsworn witness statements, the record of properly considered evidence is nevertheless sufficient to support its award. The unsworn witness statements were part of an extensive internal affairs report prepared by Morey.[1] Morey testified before the panel as to his findings in the internal affairs investigation. Morey testified that at least three individuals stated that they had sold OxyContin to the plaintiff or had observed him taking OxyContin while on duty. He testified also that three other individuals indicated to him that in the spring of 2003, the plaintiff owed them money. Morey learned from the plaintiff's department provided cellular telephone, and associated bills, that the plaintiff had used the telephone for personal reasons, including calling Mayers and Marino, two of the individuals who had claimed knowledge of the plaintiff's use of OxyContin. Morey further testified that he had received reports, unrelated to any department business, of the plaintiff's police cruiser being seen at Mayers' residence during the operative

[1] In his appeal to the trial court, the plaintiff did not challenge the panel's admission of the report of the internal affairs investigation or Morey's testimony regarding the report.

time period. Morey stated as well that the plaintiff abused his position of authority by using his uniform, badge, cellular telephone and cruiser to effect the sale of OxyContin and that he associated with individuals who had sold OxyContin to the plaintiff. Both Morey and Hale testified as to the plaintiff's inattentiveness to his duties as a canine officer, his insubordination and his lack of truthfulness. The panel found that the plaintiff's defense was not credible and that his "lack of veracity was significant" to their decision. Finally, the record further reflects that when Morey asked the plaintiff for documentation to support his explanations, such as bank statements, medical records, prescription records and credit card receipts, the plaintiff failed to provide any such documentation to him.

On the basis of the foregoing, we believe that the cumulative evidence in the record supports the panel's award. We therefore conclude that, on the record before us, there is no basis for vacating the arbitration award on the ground of arbitral misconduct.

The judgment is reversed and the case is remanded to the trial court for consideration of the plaintiff's remaining claims.

In this opinion the other judges concurred.