HARTFORD MUNICIPAL EMPLOYEES
ASSOCIATION *v.* CITY
OF HARTFORD
(AC 31262)

Lavine, Robinson and Flynn, Js.

---

Argued November 29, 2010—officially released May 17, 2011

*Saundra Kee Borges*, corporation counsel, with whom was *Ivan A. Ramos*, assistant corporation counsel, and, on the brief, *John Rose, Jr.*, former corporation counsel, for the appellant (defendant).

*Stephen F. McEleney*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. The defendant, city of Hartford, appeals from the judgment of the trial court vacating an arbitration award in which the arbitrators found that the defendant had just cause to terminate the employment of Luis Rodriguez-Davila, for violating the defendant's workplace violence policy. On appeal, the defendant claims that (1) the court erred in vacating the arbitration award because Rodriguez-Davila was not substantially prejudiced or denied a full and fair hearing by the arbitrator's decision to exclude evidence concerning one of the defendant's employees who received a lesser punishment for purportedly similar conduct and (2) the court's decision is contrary to public policy. We agree with the defendant that Rodriguez-Davila was not substantially prejudiced or denied a full and fair hearing by the arbitrator's evidentiary ruling and, therefore, reverse the judgment of the court.

The following facts and procedural history are relevant to this appeal. In 1999, Rodriguez-Davila began working for the defendant's office of human relations as a principal field representative in the minority women business enterprise certification program. In February, 2006, a director in this office, Lillian Ruiz, issued to Rodriguez-Davila a memorandum regarding his tardiness and deviation of work hours. Ruiz claimed that when Rodriguez-Davila received this memorandum, he

became agitated, threw the memorandum at her and verbally threatened her.

Rodriguez-Davila was arrested in connection with these allegations, and, in lieu of criminal prosecution, he entered into the accelerated rehabilitation program. Concerning his employment, Rodriguez-Davila agreed to enter into a last chance agreement, which provided that, within the succeeding twelve months, a second incident of unacceptable behavior in the workplace would result in termination of his employment. The agreement also required that Rodriguez-Davila participate in an anger management program.[1]

After the incident in February, 2006, the defendant transferred Rodriguez-Davila to its economic development division. On July 2, 2007, after the last chance agreement had expired, Rodriguez-Davila attended a meeting with Jose Rodriguez, Rodriguez-Davila's supervisor, Mark McGovern, the director of the economic development division, as well as Michael Fuschi, Rodriguez-Davila's union representative, to discuss Rodriguez-Davila's work performance within that department. At this meeting, when questioned about his substandard work performance, Rodriguez-Davila became very loud, pounded on the table, attempted to stand up and was asked to leave the room.[2]

McGovern and John Palmieri, director of the development services department, recommended that the defendant terminate Rodriguez-Davila's employment as a result of his conduct on July 2, 2007. On December 27, 2007, the defendant terminated Rodriguez-Davila's

[1] Although Rodriguez-Davila agreed to participate in this program, during his arbitration hearing concerning the termination of his employment, he could not recall attending anger management counseling nor could he detail the content of the program.

[2] Rodriguez testified during the arbitration hearing that Rodriguez-Davila was "talking at [him] aggressively" and pointing at him.

employment by letter, citing its workplace violence policy and Rodriguez-Davila's previous suspension in 2006.[3] On January 7, 2008, the plaintiff, Hartford Municipal Employees Association, a certified bargaining representative for certain employees of the defendant, including Rodriguez-Davila, filed a statement of grievance on behalf of Rodriguez-Davila concerning the defendant's decision.

On February 5, 2008, the plaintiff filed a request for grievance arbitration. On June 3 and June 30, 2008, a hearing was held before an arbitration panel (panel), consisting of Joseph Parker, the hearing officer, Daniel Camilliere and Michael Ferrucci, Jr., to decide the issue of "[w]hether or not the grievant, Luis Rodriguez-Davila, was terminated on or about December 27, 2007 by the city of Hartford for just cause? If not, what shall the remedy be?"

During the hearing, the plaintiff attempted to introduce evidence concerning Tyrone Bowman,[4] an individual who, while employed by the defendant, violated the defendant's workplace violence policy on two separate occasions. The plaintiff wanted to establish that while Bowman received a similar five day suspension for the first violation, he received only a thirty day suspension for the second violation, rather than having his employment terminated like Rodriguez-Davila. The plaintiff argued that this evidence was relevant to the panel's determination as to whether the defendant has a zero

---

[3] According to the letter, the defendant's workplace violence policy states that "the threat of violence is defined as: Any comment or behavior that would be interpreted by a reasonable person as indicating the potential of physical violence toward people or property." (Internal quotation marks omitted.) Although the language is not included in the letter, the defendant's policy also states that "[a]ny person who is in violation of this policy will be subject to disciplinary action, up to and including employment dismissal."

[4] The plaintiff wanted to introduce documentary evidence and testimony of the decision maker in Bowman's case.

tolerance approach for a second violation of its workplace violence policy. Parker allowed evidence of the first violation but sustained the defendant's objection to the introduction of Bowman's second violation. Specifically, Parker stated that: "We have no idea what was behind the city's motivation in *Bowan II.* You're asking us to look at an event without looking at everything that went with it, so we'd almost have to have a separate hearing on that, and I think that would be totally inappropriate for this particular panel to do."[5]

On February 9, 2009, the panel issued an arbitration award in which it denied the plaintiff's grievance and found that the defendant had just cause to terminate Rodriguez-Davila's employment. The award provided that: "Employees are entitled to a safe workplace. There was credible testimony that employees did not believe the workplace to be safe. This is sufficient reason to accept the [defendant's] position that it had both the right and responsibility to provide such an environment . . . . The [defendant] tried to correct [Rodriguez-Davila's] workplace behavior but, apparently, its effort fell on deaf ears, especially when [Rodriguez-Davila] could not recall attending anger management counseling, much less detail the content of the program."

On February 17, 2009, the plaintiff filed an application to vacate the arbitration award pursuant to General Statutes § 52-418,[6] claiming that the panel was "guilty of

[5] Before Parker made his ruling, he also stated: "So, the first Bowman [violation] I think is very appropriate. The second one, I'm not sure because there is no discipline issued to him prior to or on the same date of this grievant [Rodriguez-Davila]. So, you're asking this again to something that happened after the fact."

[6] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which

misconduct" in refusing to hear pertinent and material evidence. On June 25, 2009, after hearing arguments from both parties, the court issued an oral memorandum of decision vacating the arbitration award and remanding the case for a new hearing before a new panel. Specifically, the court concluded that: "Particularly, in this case . . . having allowed comparison to the earlier cases involving Bowman, the panel should have allowed the information as to the second incident. [It] [m]ay not be determinative, but it should have been considered by the [panel]." This appeal followed.

"We begin with the applicable legal principles and standard of review governing our analysis. Our Supreme Court has stated: [F]or many years [we have] wholeheartedly endorsed arbitration as an effective alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation. . . . When arbitration is created by contract, we recognize that its autonomy can only be preserved by minimal judicial intervention. . . . Because the parties themselves, by virtue of the submission, frame the issues to be resolved and define the scope of the arbitrator's powers, the parties are generally bound by the resulting award. . . . Since the parties consent to arbitration, and have full control over the issues to be arbitrated, a court will make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings. . . . The party challenging the award bears the burden of producing evidence sufficient to invalidate or avoid it . . . . [W]e have . . . recognized three grounds for vacating an [arbitrator's] award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy

---

the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

. . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418. . . .

"[A]rbitrators are accorded substantial discretion in determining the admissibility of evidence . . . which relieve[s] the arbitrators of the obligation to follow strict rules of law and evidence in reaching their decision. . . . *Indeed, it is within the broad discretion of arbitrators to decide whether additional evidence is required or would merely prolong the proceedings unnecessarily . . . .* This relaxation of strict evidentiary rules is both necessary and desirable because arbitration is an informal proceeding designed, in part, to avoid the complexities of litigation. Moreover, arbitrators generally are laypersons who bring to these proceedings their technical expertise and professional skills, but who are not expected to have extensive knowledge of substantive law or the subtleties of evidentiary rules. . . .

"A trial court's decision to vacate an arbitrator's award under § 52-418 involves questions of law and, thus, we review them de novo. . . . To establish that an evidentiary ruling, or lack thereof, rises to the level of misconduct prohibited by § 52-418 (a) (3) requires more than a showing that an arbitrator committed an error of law. . . . Rather, a party challenging an arbitration award on the ground that the arbitrator refused to receive material evidence must prove that, by virtue of an evidentiary ruling, he was in fact deprived of a full and fair hearing before the [arbitrator]. . . ." (Emphasis in original; internal quotation marks omitted.) *Marulli* v. *Wood Frame Construction. Co., LLC,* 124 Conn. App. 505, 509–10, 5 A.3d 957 (2010), quoting *Bridgeport* v. *Kasper Group, Inc.,* 278 Conn. 466, 473–77, 899 A.2d 523 (2006).

"The federal courts, in construing the nearly identical grounds for vacating an arbitration award under 9

U.S.C. § 10 (a) (3), have held that an arbitration hearing is fair if the arbitrator gives each of the parties to the dispute an adequate opportunity to present its evidence and argument. . . . If the evidence at issue is merely cumulative or irrelevant, the arbitrator's refusal to consider it does not deprive the proffering party of a full and fair hearing." (Internal quotation marks omitted.) *McCann* v. *Dept. of Environmental Protection*, 288 Conn. 203, 215, 952 A.2d 43 (2008).

"Additionally, to vacate an arbitrator's award on the ground of misconduct under § 52-418 (a) (3), the moving party must establish that it was substantially prejudiced by the improper ruling. . . . This requirement that the moving party establish substantial prejudice is consistent with the showing that this court requires to order a new trial when a trial court makes an improper evidentiary ruling in a civil trial. . . . In such cases, a new trial will be ordered only when the improper evidentiary ruling [likely] would [have] affect[ed] the result. . . . Federal case law considering whether an arbitrator's evidentiary ruling deprived a party of a fair hearing is consistent with requiring the moving party to demonstrate substantial prejudice to vacate an award on this ground.

\* \* \*

"Requiring the moving party to establish substantial prejudice by demonstrating that the decision excluded evidence that was decisive or likely to have altered the outcome of the claim is consistent with the principles underlying arbitration." (Citations omitted; internal quotation marks omitted.) *Bridgeport* v. *Kasper Group, Inc.*, supra, 278 Conn. 476–78. We conclude that Rodriguez-Davila has not demonstrated that he was substantially prejudiced or deprived of a full and fair hearing

by the arbitrator's evidentiary ruling. Therefore, we reverse the court's judgment.[7]

The plaintiff argues, inter alia, that evidence of Bowman's suspension would have likely affected the result of the arbitration because the evidence refutes the defendant's assertion that it has a zero tolerance approach for second violations of its workplace violence policy. We are not persuaded that this evidence is relevant to the issue presented before the panel, which was whether the defendant had just cause for terminating Rodriguez-Davila's employment. The defendant terminated Rodriguez-Davila's employment as a result of his conduct on July 2, 2007, and in light of the fact that he had been suspended from employment less than two years earlier for similar conduct. We do not see how evidence relating to the suspension of Bowman, an employee who is unrelated to the facts surrounding the termination of Rodriguez-Davila's employment, would have likely affected the panel's decision.[8]

---

[7] Because we agree with the defendant that Rodriguez-Davila was not substantially prejudiced or denied a full and fair hearing by the arbitrator's evidentiary ruling, we do not address its claim that the court's decision to vacate the arbitration award violated public policy.

[8] Even on the limited record before us, we note that there are meaningful differences between Bowman's and Rodriguez-Davila's circumstances. Significantly, as noted, Rodriguez-Davila entered into a last chance agreement after his first suspension, and he agreed to attend anger management counseling. Bowman never made such an agreement or was ever told by the defendant that anger management counseling was appropriate. Instead, the defendant *recommended* that Bowman contact the employee assistance program "to address issues that may interfere with [Bowman's] ability to perform the duties of [his] job." Additionally, the panel noted that Rodriguez-Davila could not recall attending his anger management counseling sessions. Rodriguez-Davila's failure to take advantage of efforts made by the defendant to help him with his anger management problems appears to be an important factor for the panel. There is nothing in the record to suggest that Bowman also ignored attempts by the defendant to help him with any anger management issues he may have had. Moreover, although Bowman and Rodriguez-Davila both worked for the defendant, they worked in different divisions. Specifically, Bowman worked for the department of emergency services and telecommunications in the public safety dispatch center while Rodri-

Moreover, we disagree with the plaintiff's contention that the panel relied heavily on any assertion by the defendant that it was simply adhering to a zero tolerance policy for second violations of its workplace violence policy. The arbitration award makes no reference to a zero tolerance policy. Rather, the panel references the concerns of the defendant's employees who worked with Rodriguez-Davila, along with Rodriguez-Davila's reluctance to address his anger problems, in finding that the defendant had just cause to terminate Rodriguez-Davila's employment.

The panel noted in the arbitration award that the defendant had attempted to correct Rodriguez-Davila's workplace behavior but that Rodriguez-Davila was reluctant to take advantage of those efforts. Specifically, the panel noted that Rodriguez-Davila could not recall attending the anger management counseling sessions that he had agreed to attend after his 2006 suspension or detail the content of those sessions. The panel also stated that the defendant's employees are entitled to a safe workplace and that there was credible evidence that employees did not believe the workplace to be safe. Therefore, the panel accepted the defendant's position that it had both the right and responsibility to provide a safe environment and to terminate Rodriguez-Davila's employment. The panel did not, however, state that the defendant had no choice but to terminate Rodriguez-Davila's employment.

In its brief, the plaintiff points to this reasoning by the panel and questions why the defendant did not exercise this responsibility in connection with its discipline of Bowman. We will not speculate as to the reason for the defendant's decision to suspend Bowman rather than to terminate his employment for a second violation

guez-Davila worked for the office of human relations and then the economic development division.

of its workplace violence policy. Instead, we conclude that under the specific evidence presented to the panel concerning Rodriguez-Davila and the evidence relied on by the panel in reaching its decision, additional evidence of an allegedly similarly situated employee, who received a lesser punishment, was not relevant or likely to have affected the panel's final decision.[9]

The plaintiff also argues that our Supreme Court, in *Bridgeport* v. *Kasper Group, Inc.*, supra, 278 Conn. 466, spoke on the issue of denying admission of strong probative evidence merely because a postponement of the arbitration process was required and overturned an arbitration award for failing to grant such a postponement. *Kasper Group, Inc.*, the only Connecticut appellate case we have found in which an arbitration award was reversed pursuant to § 52-418 (a) (3) because the arbitrator refused to admit proffered evidence, however, is factually distinct from the case before us. In *Kasper Group, Inc.*, the city of Bridgeport (city) entered into negotiations with The Kasper Group, Inc. (Kasper), to design an elementary school. Id., 468. The city later changed the plans for the school to include classrooms for students in seventh and eighth grades and invited proposals from other design firms, in addition to Kasper, for the design of the new school. Id., 468–69. Kasper instituted an action seeking to enjoin the city from soliciting new proposals and terminating an

---

[9] In his dissent, Judge Flynn argues that: "Arbitrators have reinstated employees after listening to evidence of disparate treatment of similarly situated employees, evidence which the panel in the present case refused even to hear. These arbitration decisions, in which the arbitrators not only consider but also rely on evidence of disparate discriminatory treatment of similarly situated employees to reinstate an employee who was terminated, support a showing of substantial prejudice." While we do not doubt that some other panels have been persuaded by evidence of disparate treatment in previous cases, the defendant has not established that the excluded evidence would have likely changed the outcome in *this* case.

alleged contract it had with the city.[10] Id., 469. The parties agreed to enter into arbitration. Id. During arbitration, the city argued that even if there was a contract between the parties, it was void ab initio because it had been procured by illegal means. Id.

The facts supporting the city's defense were that Paul Pinto, the owner of 99 percent of Kasper's shares, had entered into a plea agreement with the federal government admitting, in part, to having engaged in a bribery and kickback scheme with then city mayor Joseph Ganim to obtain city municipal contracts.[11] Id., 469–70. The arbitrator, however, denied the city's motion to consider Pinto's testimony in the Ganim criminal trial and rendered an award in favor of Kasper. Id., 471. The trial court later vacated the award pursuant to § 52-418 (a) (3), finding that the arbitrator had committed misconduct by precluding the use of Pinto's testimony as evidence. Id.

In affirming the trial court's judgment, our Supreme Court held that the city was substantially prejudiced by the exclusion of Pinto's testimony. Id., 483. Specifically, the court stated that "Pinto's testimony would have made the conclusion that he illegally had procured the West Side School contract very likely. At the very least, his testimony very [likely] would [have] affect[ed] the result of the arbitration had it been introduced." (Internal quotation marks omitted.) Id. The court went on to state that: "Indeed, to consider the testimony and conclude otherwise, an arbitrator would have to find

[10] When the city notified Kasper that it originally had been selected to design the school, it also sent Kasper a draft contract. A representative of the city, however, never signed the contract. *Bridgeport* v. *Kasper Group, Inc.*, supra, 278 Conn. 468.

[11] The city claimed that Pinto's testimony established that any contract was procured illegally, and it refuted Kasper's argument that a prior course of dealing had been established between the parties. *Bridgeport* v. *Kasper Group, Inc.*, supra, 278 Conn. 472.

that, although Pinto's job was to do whatever he had to do in order to continue the flow of work to the defendant, that Pinto had engaged in a widespread corruption scheme that resulted in him getting every contract he wanted, and that Pinto had procured major municipal contracts, including 'some school jobs,' the scheme nevertheless did not extend to the one contract at issue in this case. Such a conclusion, however, contravenes both logic and common sense. Accordingly, we conclude that the trial transcript was so central to the plaintiff's case that the arbitrator's failure to consider it was misconduct." Id., 483–84.

Here, the Bowman evidence was not so central to the plaintiff's case that the panel's failure to consider it was misconduct. Unlike the excluded evidence in *Kasper Group, Inc.*, the Bowman evidence did not establish a defense to the allegations raised by the defendant. While the evidence did arguably support the claim that the defendant did not have a zero tolerance policy, even considering this evidence, the panel's decision does not contravene logic or common sense. The panel referenced the safety concerns of Rodriguez-Davila's coworkers and Rodriguez-Davila's reluctance to take advantage of the anger management counseling sessions mandated as part of his last chance agreement. These are relevant and material grounds to rely on in determining that an employee should be removed from the workplace. Therefore, a panel could logically conclude that there was just cause to support termination of employment even though an allegedly similarly situated employee received a lesser punishment.

Finally, we conclude that the exclusion of the Bowman evidence did not deprive Rodriguez-Davila of a full and fair hearing. Parker's explanation for excluding the evidence concerning Bowman's second violation of the defendant's workplace violence policy was reasonable, and it was within his broad discretion to decide whether

the additional evidence was required or would merely prolong the proceedings unnecessarily. The plaintiff introduced testimony from five witnesses, including Rodriguez-Davila's union representative who was present during the July 2, 2007 meeting, and was permitted to cross-examine the defendant's four witnesses. Additionally, even if the plaintiff had established that the defendant did not have a zero tolerance policy, the panel reasonably could have found that Rodriguez-Davila's repeated violations of the defendant's workplace violence policy justified his termination. See *McCann* v. *Dept. of Environmental Protection*, supra, 288 Conn. 216.[12]

The judgment is reversed and the case is remanded with direction to render judgment denying the plaintiff's application to vacate the award.

In this opinion ROBINSON, J., concurred.

FLYNN, J. dissenting. General Statutes § 52-418 assures a full and fair hearing to parties to an arbitration by expressly authorizing the Superior Court to vacate an award when an arbitration panel refuses to hear evidence pertinent and material to the controversy. Judge Hale, pursuant to § 52-418, properly vacated the arbitration award in this case because he found that the arbitration panel was guilty of misconduct in refusing to hear evidence, which was pertinent and material to the controversy, from Luis Rodriguez-Davila, the grievant, who had been discharged. The panel had refused to hear evidence that B, another employee guilty of more egregious conduct, who had actually voiced a threat in the workplace to another, received only a six month

---

[12] Although the excluded evidence in *McCann* consisted of stipulated agreements, which expressly provided that they were not to be used as precedent in other cases; *McCann* v. *Dept. of Environmental Protection*, supra, 288 Conn. 212–13; we find the court's analysis of the full and fair hearing standard to be germane.

suspension, later reduced by another panel to thirty days, as opposed to the grievant Rodriguez-Davila's discharge. Judge Hale found that the evidence was pertinent to the remedy to be applied by the panel in determining whether the grievant was unjustly terminated from employment. Judge Hale's conclusion that the excluded evidence was "very pertinent to the question of remedy" is consistent with that principle of common law of arbitrability in labor cases, which recognizes that disparate or discriminatory application of an employee's discipline is one measure of whether a grievant was discharged for just cause, which can be determinative.[1] Two workplace incidents had occurred involving similar conduct. In them, both the grievant and B had similar histories of prior incidents and progressive discipline. Both the grievant and B were employed by the same city of Hartford, under the same union contract. One employee, B, who threatened another to "'watch out'" was only suspended;[2] the grievant, who merely shouted, was fired. Judge Hale found that because the panel had allowed evidence as to the first incident involving B, evidence should also have been allowed as to the second incident involving B, which resulted only in B's suspension and is the basis of Rodriguez-Davila's claim. I agree and would affirm his thoughtful judgment vacating the award.

In Public Acts 1929, c. 65, § 11, codified as amended at § 52-418 (a) (3), the General Assembly provided that any party "to an arbitration" may apply to the Superior Court to vacate an award "if the arbitrators have been guilty of misconduct . . . in refusing to hear evidence

---

[1] "It is well understood in labor relations that discipline must not be arbitrary, capricious and discriminatory, that, for instance, like offenses must be treated in similar fashion." *Bridgeport* v. *Bridgeport Fire Fighters, IAFF, Local 834*, 97 Lab. Arb. Rep. (BNA) 327, 331 (1991) (Freedman, Arb.).

[2] Another employee described B as "'aggressive'" and "'very intimidating,'" who swore at her, taking issue that she wrote a report about him, and then warned her that "she better watch out."

pertinent and material to the controversy . . . ." The Hartford Municipal Employees Association, a labor union, was a party to an arbitration between it and the city of Hartford, arising out of the grievance of Rodriguez-Davila who had been fired. The contract contained a "just cause" dismissal provision.[3] It provided in pertinent part: "No employee can be reprimanded, suspended, demoted or discharged except for just cause." There is no contractual definition between the union and the city of "just cause." In 1966, Arbitrator Carroll R. Daugherty issued an award in *Enterprise Wire Co.* v. *Enterprise Independent Union*, 46 Lab. Arb. Rep. (BNA) 359 (Mar. 28, 1966), where, in the absence of a contractual definition of just cause, he established a seven prong approach to determine whether just cause existed for discipline. Soon thereafter, other arbitrators adopted these standards, labeling them "Daugherty tests of just cause." So well respected and widely adopted have Daugherty's views become that the seven prongs are now an integral part of arbitral common law. C. Deitsch, "Jekyll and Hyde: The Split Personalities of a Public Sector Arbitrator," 30 J. Collective Negotiations in Pub. Sector 16 (2003).

The sixth prong of the Daugherty test is pertinent to the issues before us. It is: "Has the [employer] applied its rules, orders, and penalties evenhandedly and without discrimination to all employees?" *Enterprise Wire Co.* v. *Enterprise Independent Union*, supra, 46 Lab. Arb. Rep. 364. This inquiry and the other prongs of Daugherty's test have long been used by the Connecticut state board of mediation and arbitration, which has taken evidence on whether disparate or discriminatory treatment has occurred in deciding "just cause" discipline

---

[3] "In arbitration, termination is regarded as the industrial equivalent of capital punishment, therefore, this termination, to be sustained, must pass both the just cause test and also be procedurally correct." *Bridgeport* v. *Bridgeport Fire Fighters, IAFF, Local 834*, 97 Lab. Arb. Rep. (BNA) 327, 330 (1991) (Freedman, Arb.).

cases. See *Evening Sentinel* v. *Ansonia Typographical Union, No. 285*, State Board of Mediation & Arbitration, Case No. 7071-A-175, p. 7 (May 26, 1971) (Weckstein, Arb.).[4] It continues to hear evidence on the sixth antidiscriminatory prong until the present day. When heard, it is often dispositive. In *New London* v. *International Assn. of Firefighters, IAFF, Local 1522*, State Board of Mediation & Arbitration, Case No. 9697-A-690, p. 3 (July 28, 1999) (Cain, Arb.), the board determined that the grievant firefighter's disparate treatment argument was well taken because in a separate, similar incident, another firefighter had not been discharged from employment. It found the grievant's employment was not terminated for "just cause" and ordered reinstatement. Id., p. 4. In another discharge case, *New Haven* v. *AFSCME, Council 4, AFL-CIO, Local 3144*, 90 Lab. Arb. Rep. (BNA) 1040, 1042 (1988) (Stacey, Arb.), the board ordered reinstatement of the grievant because she was treated in a disparate manner from others similarly situated who were granted time to change back residency within the city limits of New Haven. The panel found that the actions of the residency review board

---

[4] Recent case law dealing with a different issue also has mentioned without attribution the seven part *Enterprise Wire Co.* test in *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, 298 Conn. 824, 6 A.3d 1142 (2010). "The [a]rbitrator utilized, as guidance in her deliberations, those certain elements of just cause that can be restated as follows:

"1. Was the employee forewarned of the consequences of [her] misconduct?

"2. Was the [e]mployer's rule or order reasonably related to safe and efficient operations?

"3. Did the [e]mployer, before administering the discipline, investigate to discover whether the employee did in fact violate or disobey a rule or order?

"4. Was the [e]mployer's investigation conducted fairly and objectively?

"5. Did the investigation produce substantial evidence or proof that the employee was guilty as charged?

"6. Has the [e]mployer applied its rules, orders and penalties evenhandedly and without discrimination?

"7. Was the degree of discipline reasonably related to the seriousness of the employee's proven offense and the employee's past record?" (Internal quotation marks omitted.) Id., 829–30.

were "not uniform" in regard to the application for waiver, submitted to it by the grievant. Id. *International Brotherhood of Electrical Workers, Local Union 420* v. *Connecticut Light & Power Co.*, State Board of Mediation & Arbitration, Case No. 2010-A-0216 (April 27, 2010) (Weiner, Arb.) provides another example. In it, three experienced arbitrators on the Connecticut state board of mediation and arbitration, Chairman Gerald T. Weiner, and members Raymond Shea and David Ryan, unanimously agreed that the disparity of punishment imposed on two workers for similar offenses was "not justified" where one was only suspended for two weeks and the grievant was fired. They ordered the grievant reinstated based on the antidiscriminatory sixth prong.

I do not suggest that an arbitrator is acting improperly in excluding evidence simply because someone sought to introduce evidence that was cumulative or irrelevant. But, the panel chair here did not claim that the evidence was cumulative or irrelevant. Instead, he said that the panel could not examine the second instance of B's workplace misconduct because "we'd have to bring in everybody." In *Bridgeport* v. *Kasper Group, Inc.*, 278 Conn. 466, 485, 899 A.2d 523, aff'd, 278 Conn. 466, 899 A.2d 523 (2006), a construction contract dispute, our Supreme Court held that denial of the opportunity to present evidence that the mayor was taking bribes, because it would take additional time, was not a proper reason. Taking time to listen to material and relevant evidence from the parties is what the panel of arbitrators is there for and that is what the arbitration statute contemplates that they do.

The panel chair also stated that his reason for not admitting the discipline B received for the second instance of workplace misconduct was that it was issued after the discipline issued to the grievant. "In 'disparate treatment' cases, the grievant's claim may be that he or she has been disadvantaged because other

employees are currently being treated or in the past were treated in a more favorable manner . . . ." A. Koven & S. Smith, Just Cause: The Seven Tests 360 (3d Ed. 2006). I agree with Judge Hale's observation that it is difficult to see how the first discipline of B for similar conduct was admitted as relevant and material, but the second, less severe discipline of B imposed four months later for similar but more egregious conduct was excluded when the panel did not establish or determine that the second incident was irrelevant or cumulative.

It is well established that a party to an arbitration is entitled to a "full and fair hearing." *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 149, 523 A.2d 1271 (1987). Each side to an arbitration must be given a full and fair opportunity to present material evidence that is not cumulative. *Bridgeport* v. *Kasper Group, Inc.*, supra, 278 Conn. 466. If the panel refuses evidence that is material, the challenging party must still show substantial prejudice, meaning that it was likely to affect the result. *Krassner* v. *Ansonia*, 100 Conn. App. 203, 208–209, 917 A.2d 70 (2007). Arbitrators have reinstated employees after listening to evidence of disparate treatment of similarly situated employees, evidence which the panel in the present case refused even to hear. These arbitration decisions, in which the arbitrators not only consider but also rely on evidence of disparate discriminatory treatment of similarly situated employees to reinstate an employee who was terminated, support a showing of substantial prejudice. In the present case, Judge Hale found that the evidence is "very pertinent" to the question of remedy, which although not necessarily determinative, was important evidence. I believe these findings, recognizing that the remedy was the real issue to which the evidence pertained, satisfied the necessary showing of substantial prejudice. The *Krassner* v. *Ansonia* case

emphasizes that to establish the substantial prejudice that one needs to show to vacate an award, it suffices if the excluded evidence is *likely* to affect the result. See id., 209. The burden is not to show that the evidence, if admitted, would have *dictated* the result with certainty.

I would affirm Judge Hale's judgment.