******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STEPHEN C. MCCULLOUGH *v.* TOWN
OF ROCKY HILL
(AC 41834)

Lavine, Elgo and Sheldon, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant town for, inter
alia, abuse of process and various other intentional torts. The town, after
discussion with the plaintiff and without his objection, began mowing
overgrown grass, removing shrubbery and cutting and removing certain
branches and trees on an area of land located between the plaintiff's
property line and the curb of the adjacent street. One month later,
however, the plaintiff, after consulting a tree expert, informed town
officials that he intended to bring an action against the town because
he believed that some of the cut branches and trees had been on his
property and that the town had unlawfully cut them. The plaintiff sent
a $400,000 invoice to the town manager for "tree and related damages."
Thereafter, the town brought an action against the plaintiff to foreclose
municipal tax liens on his property. While the foreclosure action was
pending, the town notified the plaintiff of an increase in the 2013 assess-
ment of his property. The trial court rendered judgment in favor of the
plaintiff in the foreclosure action, and, the plaintiff commenced the
present action. In a twelve count complaint, the plaintiff alleged, in
counts one and four, abuse of process in connection with the foreclosure
action and the 2013 assessment, respectively, and, in count eight, abuse
of process for the town's alleged misuse of the statute (§ 8-12) that sets
forth the procedure to be followed when ordinances are violated. In
the other counts of the complaint, the plaintiff alleged, inter alia, that
the town committed multiple intentional torts. In response, the town
filed an answer and special defenses, including governmental immunity
pursuant to statute (§ 52-557n (a) (2) (A)) with respect to ten counts.
The trial court rendered summary judgment in favor of the town on all
counts, from which the plaintiff appealed to this court. *Held*:

1. The trial court properly rendered summary judgment in favor of the
town on the plaintiff's intentional tort claims, as that court correctly
determined that the doctrine of governmental immunity barred those
claims; it was undisputed that the town is a political subdivision of the
state, and, therefore, the protection from liability under § 52-557n (a)
(2) (A) applied to the intentional tort claims, as the plaintiff failed to
identify any statute that abrogated the town's governmental immunity
with respect to the relevant intentional torts.

2. The trial court properly rendered summary judgment in favor of the town
on the abuse of process claims in counts four and eight of the plaintiff's
complaint; those claims contained no allegations that the town utilized
a judicial process or instituted a legal proceeding against the plaintiff,
but, rather, they pertained to the municipal property revaluation process
and the authority of a zoning enforcement officer to issue orders, in
accordance with municipal enactments, regarding the removal of inoper-
able vehicles from private property, and, therefore, the conduct alleged,
as a matter of law, did not support an abuse of process claim.

3. The trial court properly rendered summary judgment in favor of the town
on the abuse of process claim in count one of the plaintiff's complaint:
no genuine issue of material fact existed as to whether the town com-
menced the tax lien foreclosure action for the primary purpose of escap-
ing liability for $400,000 in damages that allegedly resulted from the
overgrowth remediation activities on the plaintiff's property, as the
record was bereft of properly authenticated affidavits, exhibits or other
documentation to substantiate the plaintiff's bald assertion that the town
had done so; moreover, although a genuine issue of material fact existed
as to whether the primary purpose of the tax lien foreclosure action
was the collection of delinquent taxes or the remediation of blight on
the plaintiff's property, this court concluded that the protections of § 52-
557n (a) (2) (A), nevertheless, afforded the town governmental immunity
against the plaintiff's abuse of process claim, as abuse of process is an

intentional tort and, therefore, § 52-557n (a) (2) (A) applied, and the plaintiff failed to identify any statute that abrogated the town's immunity from liability to permit his claim.

Argued January 22—officially released July 7, 2020

*Procedural History*

Action to recover damages for, inter alia, abuse of process, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the court, *Wiese, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Stephen C. McCullough*, self-represented, the appellant (plaintiff).

*Melinda A. Powell*, for the appellee (defendant).

*Opinion*

ELGO, J. The self-represented plaintiff, Stephen C. McCullough, appeals from the summary judgment rendered by the trial court in favor of the defendant, the town of Rocky Hill, on all twelve counts of his operative complaint. On appeal, the plaintiff raises several claims that do not merit substantive discussion.[1] The plaintiff further claims that the court improperly rendered summary judgment in favor of the defendant on (1) the intentional tort claims pleaded in his operative complaint and (2) his abuse of process claims. We affirm the judgment of the trial court.

The record, which we view in the light most favorable to the plaintiff for purposes of reviewing the trial court's rendering of summary judgment, reveals the following facts and procedural history. At all relevant times, the plaintiff owned a parcel of real property known as 140 Hayes Road (property) in the defendant municipality. In early 2012, the defendant enacted a municipal blight ordinance.[2] In the months that followed, various officials visited the property and discussed overgrowth with the plaintiff.

On August 27, 2012, town officials began mowing overgrown grass and removing shrubbery on land located between the plaintiff's property line and the curb of the adjacent street.[3] Those efforts continued on August 28, 2012, when certain branches and trees were cut and removed from that area at the direction of Lisa Zerio, the defendant's tree warden. It is undisputed that the plaintiff did not voice any objection at that time. In his deposition testimony, the plaintiff stated that he initially assumed that the trees and branches were not on his property and that he had simply asked town officials not to "cut down any more than you have to . . . ."[4]

Weeks later, however, the plaintiff contacted Robert Ricard, a tree expert at the University of Connecticut. As a result of his communications with Ricard, the plaintiff came to believe that some of the cut branches and trees had been located on his property and that the defendant, by cutting them, had "disobeyed the tree laws." The plaintiff met with town officials in September, 2012, to express his displeasure, at which time he informed them of his intent to sue the defendant. The plaintiff contemporaneously sent a $400,000 invoice to the defendant's town manager for "tree and related damages."

At that time, the plaintiff had multiple years of outstanding property tax assessments from the defendant that he had not paid. In November, 2012, the defendant brought an action to foreclose municipal tax liens against the plaintiff (foreclosure action).[5] Following a trial, the court found that the plaintiff had "paid no portion" of the property taxes duly assessed for the

2008 through 2013 tax years. *Rocky Hill* v. *McCullough*, Superior Court, judicial district of New Britain, Docket No. CV-12-6018310-S (June 30, 2015). The court nevertheless found that, although the defendant had presented the sworn testimony of its tax collector, it "did not produce the original certificates [of liens] nor certified copies." Id. Its failure to do so, the court concluded, was "fatal to the [defendant's] case, as sufficient evidence to support a prima facie case was not offered . . . ." Id. The court thus rendered judgment in favor of the plaintiff in the foreclosure action on June 30, 2015. No appeal was taken from that judgment.

The plaintiff commenced the present action approximately two months later by service of process on September 4, 2015. On September 17, 2015, Kimberley A. Ricci, the defendant's zoning enforcement officer, sent the plaintiff a letter regarding an "unregistered/inoperable Mercedes-Benz" located on the property in violation of chapter 234 of the defendant's code of ordinances (code). Ricci's letter asked the plaintiff to "rectify this violation by either registering the vehicle or [storing] the vehicle under a covered structure . . . ." In his deposition testimony, the plaintiff admitted that he stored unregistered vehicles on the property and that the Mercedes-Benz in question was not registered at the time that Ricci sent the violation notice.[6] There is no evidence in the record before us as to whether the plaintiff complied with that violation notice.

Over the next ten months, the plaintiff filed multiple amended complaints in response to the defendant's requests to revise. On August 17, 2016, the defendant moved to strike all twelve counts of the plaintiff's July 18, 2016 amended complaint. Following a hearing, the court issued a detailed memorandum of decision on January 24, 2017, in which it granted the motion to strike as to all but the first count of the complaint, alleging abuse of process.[7]

After obtaining multiple extensions of time to replead, the plaintiff filed the operative complaint, his twelve count substitute complaint, on April 24, 2017. Counts one and four of that complaint both alleged abuse of process in connection with the foreclosure action and the 2013 reassessment of the property, respectively. See footnote 5 of this opinion. Counts two and nine alleged intentional infliction of emotional distress. Count three alleged invasion of privacy on the basis of an illegal search of the property allegedly conducted by a member of the Rocky Hill Police Department in 2013. Count five alleged inverse condemnation and due process violations under the state and federal constitutions. Count six alleged trespass, and count seven alleged trespass to chattels, as well as an illegal search that the defendant's zoning enforcement officer allegedly conducted during the defendant's overgrowth remediation activities on the property on August 27,

2012. Count eight set forth another abuse of process claim predicated on the defendant's alleged "misuse of . . . General Statutes § 8-12," and count ten alleged fraudulent misrepresentation. Count eleven concerned a municipal ordinance that required property owners to remove ice and snow from their sidewalks[8] and alleged that the ordinance in question was an illegal enactment. Lastly, count twelve alleged an illegal search related to the September 17, 2015 violation notice regarding the unregistered Mercedes-Benz on the property.

In response, the defendant filed its answer and three special defenses. The first special defense alleged governmental immunity with respect to counts one through ten. In its second special defense, the defendant alleged that all twelve counts were barred by applicable statutes of limitations set forth in General Statutes §§ 52-577 and 52-584. The third special defense alleged that the plaintiff lacked standing to challenge the constitutionality of the municipal ordinance at issue in count eleven of the complaint.

On June 2, 2017, the court entered a scheduling order that, inter alia, obligated the defendant to file its motion for summary judgment by June 21, 2017. In accordance with that order, the defendant filed a motion for summary judgment on June 21, 2017, which was accompanied by a memorandum of law and eight exhibits.[9] On that same date, the plaintiff filed a request for leave to amend his complaint, to which the defendant objected. By order dated July 31, 2017, the court denied the plaintiff's request "pending the outcome of the motion for summary judgment." The plaintiff then filed memoranda of law in opposition to summary judgment on September 25 and October 11, 2017,[10] together with two documents purporting to be his own affidavits.[11]

The court heard argument on the defendant's motion for summary judgment on October 16, 2017. It thereafter rendered summary judgment in favor of the defendant on all twelve counts of the operative complaint, as detailed in a memorandum of decision dated January 31, 2018. The plaintiff filed a motion seeking reargument and reconsideration, which the court denied, and this appeal followed.

As a preliminary matter, we note the well established standard that governs our review of the trial court's decision to grant a motion for summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . [T]he moving party . . . has the burden of showing the absence of any genuine

issue as to all the material facts . . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Lucenti* v. *Laviero*, 327 Conn. 764, 772–73, 176 A.3d 1 (2018).

I

We begin with the plaintiff's claims regarding certain intentional torts allegedly committed by the defendant.[12] On appeal, the plaintiff claims that the court improperly rendered summary judgment on those claims. The defendant, by contrast, submits that the court properly determined that the doctrine of governmental immunity barred those claims. We agree with the defendant.

The defendant's motion for summary judgment was predicated on General Statutes § 52-557n (a) (2), which provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct . . . ." In *Pane* v. *Danbury*, 267 Conn. 669, 685–86, 841 A.2d 684 (2004), overruled on other grounds by *Grady* v. *Somers*, 294 Conn. 324, 349, 984 A.2d 684 (2009), our Supreme Court held that the defendant municipality could not be liable for intentional torts committed by its employees under § 52-557n (a) (2) (A). This court consistently has adhered to that precedent. See, e.g., *Avoletta* v. *Torrington*, 133 Conn. App. 215, 224, 34 A.3d 445 (2012) ("under our case law, a municipality cannot be held liable for the intentional torts of its employees"); *Martin* v. *Westport*, 108 Conn. App. 710, 729, 950 A.2d 19 (2008) (noting general rule that municipality and its agents are immune from liability for acts conducted in performance of official duties); *McCoy* v. *New Haven*, 92 Conn. App. 558, 562, 886 A.2d 489 (2005) (protection afforded to municipality under § 52-557n (a) (2) (A) bars intentional torts unless otherwise provided by law); *O'Connor* v. *Board of Education*, 90 Conn. App. 59, 65, 877 A.2d 860 (explaining that intentional torts fall within purview of § 52-557n (a) (2) (A) because "there is no distinction between 'intentional' and 'wilful' conduct"), cert. denied, 275 Conn. 912, 882 A.2d 675 (2005).[13]

In the present case, it is undisputed that the defendant is a political subdivision of the state. It also is undisputed that the plaintiff has alleged intentional torts

against the defendant. As a result, the protection of § 52-557n (a) (2) (A) applies unless that immunity from liability has been abrogated by statute. See *Avoletta* v. *Torrington*, supra, 133 Conn. App. 221; *Martin* v. *Westport*, supra, 108 Conn. App. 730. The plaintiff has not identified any statute that abrogates the defendant's governmental immunity with respect to the intentional torts in question. For that reason, the trial court properly determined that no genuine issue of material fact existed and that the defendant was entitled to judgment as a matter of law on those claims.

II

The plaintiff also claims that the court improperly rendered summary judgment on his abuse of process claims. We do not agree.

Under Connecticut law, "[a]n action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." (Internal quotation marks omitted.) *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 260 Conn. 766, 772, 802 A.2d 44 (2002); see also *MacDermid, Inc.* v. *Leonetti*, 158 Conn. App. 176, 184, 118 A.3d 158 (2015) ("the tort of abuse of process also provides a cause of action against the improper use of the judicial system"). As our Supreme Court has explained, "although the definition of process may be broad enough to cover a wide range of judicial procedures, to prevail on an abuse of process claim, the plaintiff must establish that the defendant *used a judicial process* for an improper purpose." (Emphasis altered.) *Larobina* v. *McDonald*, 274 Conn. 394, 406–407, 876 A.2d 522 (2005). Accordingly, an essential element of an abuse of process claim is the use of a judicial process by the defendant.

A

The abuse of process claims set forth in counts four and eight are patently deficient in this regard. They contain no allegations that the defendant utilized a judicial process or instituted a legal proceeding against the plaintiff. Rather, they pertain to the municipal property revaluation process and the authority of a zoning enforcement officer to issue orders, in accordance with municipal enactments, regarding the removal of inoperable vehicles from private property. In *Larobina* v. *McDonald*, supra, 274 Conn. 407, our Supreme Court held that certain "acts alleged by the plaintiff in support of his abuse of process claim did not involve a judicial procedure and, therefore, as a matter of law, do not support an abuse of process claim." That logic applies with equal force to the abuse of process claims contained in counts four and eight of the operative complaint. We therefore conclude that the court properly rendered summary judgment in favor of the defendant

on those claims.

## B

Unlike counts four and eight, count one of the operative complaint contains an allegation that the defendant improperly utilized a judicial process. In that count, the plaintiff alleged that the defendant commenced the foreclosure action with "extreme malice, wantonness, and intent to injure the plaintiff . . . ." More specifically, he alleged that the defendant impermissibly utilized the statutory tax lien foreclosure process (1) to escape liability "for $400,000 in tree and related damages" allegedly incurred as a result of the defendant's overgrowth remediation activities on the property in August, 2012, and (2) to circumvent "blight statutes and instead . . . go after blight through foreclosure . . . ." On appeal, the plaintiff claims that the court improperly rendered summary judgment on those abuse of process claims. We disagree.

Taxes are the lifeblood of a municipality. Their "prompt and certain availability [is] an imperious need." *Bull* v. *United States*, 295 U.S. 247, 259, 55 S. Ct. 695, 79 L. Ed. 1421 (1935). For that reason, municipalities in this state are afforded a host of options under our General Statutes to collect delinquent taxes.[14] Among those is the authority to foreclose on outstanding municipal tax liens. See General Statutes § 12-181; see also Practice Book § 10-70 (setting forth elements municipality must allege and prove in tax lien foreclosure action). The defendant's authority to commence the foreclosure action is unquestionable.

The sole question, then, is whether a genuine issue of material fact exists as to whether the defendant commenced that action "*primarily* to obtain a wrongful purpose for which the proceedings were not designed." (Emphasis added; internal quotation marks omitted.) *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 157 Conn. App. 139, 191, 117 A.3d 876, cert. denied, 318 Conn. 902, 122 A.3d 631 (2015), and cert. denied, 318 Conn. 902, 123 A.3d 882 (2015). A plaintiff cannot prevail if the municipality utilized the judicial process "for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." (Internal quotation marks omitted.) *Mozzochi* v. *Beck*, 204 Conn. 490, 494, 529 A.2d 171 (1987). Accordingly, to prevail on his abuse of process claim, the plaintiff must prove that the defendant utilized the tax lien foreclosure process primarily for a "wrongful and malicious purpose to attain an unjustifiable end . . . ." (Internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 95 n.10, 912 A.2d 1019 (2007).

## 1

We first address the plaintiff's claim that the defen-

dant commenced the tax lien foreclosure action for the primary purpose of evading liability for $400,000 in damages stemming from the August, 2012 remediation activities on the property. The record before us is bereft of properly authenticated affidavits, exhibits, or other documentation to substantiate that bald assertion.

"It is frequently stated in Connecticut's case law that . . . a party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . Moreover, [t]o establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief. . . . Further, unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact." (Internal quotation marks omitted.) *Tuccio Development, Inc.* v. *Neumann*, 111 Conn. App. 588, 594, 960 A.2d 1071 (2008); see also *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 558, 791 A.2d 489 (2002) (party may not rely on mere speculation or conjecture as to true nature of facts to overcome motion for summary judgment). There is no evidence in the record to substantiate the purported $400,000 in "tree and related damages" that the plaintiff alleged in the operative complaint.[15]

There also is no evidence that the plaintiff ever paid the delinquent taxes in question, nor does he so claim. In its memorandum of decision in the foreclosure action, which was submitted in support of the defendant's motion for summary judgment, the trial court specifically found that the plaintiff had "paid no portion" of the property taxes duly assessed for the 2008 through 2013 tax years. *Rocky Hill* v. *McCullough*, supra, Superior Court, Docket No. CV-12-6018310-S. Accordingly, we conclude that no genuine issue of material fact exists as to whether the defendant commenced the foreclosure action for the primary purpose of escaping liability for $400,000 in damages that allegedly resulted from the August, 2012 remediation activities on the property.

2

In count one of his complaint, the plaintiff alternatively claimed that the defendant abused the tax lien foreclosure process to bypass established blight enforcement protocols. He alleged that the defendant commenced the foreclosure action to circumvent the "blight statutes" and, instead, chose to "go after blight through foreclosure, because it is easier . . . ." On appeal, the plaintiff contends that the court improperly rendered summary judgment on that claim. We do

not agree.

Under Connecticut law, municipalities are authorized to impose blight liens on real property and, when necessary, to commence legal actions to foreclose on those liens. General Statutes § 7-148 (c) (7) (H) (xv) provides in relevant part that municipalities are empowered to "[m]ake and enforce regulations for the prevention and remediation of housing blight" and to "prescribe civil penalties for the violation of such regulations . . . ." General Statutes § 7-148aa likewise provides in relevant part: "Any unpaid penalty imposed by a municipality pursuant to the provisions of an ordinance regulating blight, adopted pursuant to subparagraph (H) (xv) of subdivision (7) of subsection (c) of section 7-148, shall constitute a lien upon the real estate against which the penalty was imposed from the date of such penalty. . . ."

In its memorandum of decision, the court stated that, "even if the defendant had pursued the plaintiff's property pursuant to the blight ordinances, it could have sought the same outcome; acquisition of the property, through the same process: foreclosure." That observation confuses the availability of a statutory mechanism with its actual utilization. Significantly, there is no indication in the record before us that the defendant *ever* issued any blight citations to the plaintiff or recorded any blight liens on the property.

In the operative complaint, the plaintiff alleged that the defendant commenced the foreclosure action because the blight foreclosure process is a more cumbersome and time-consuming endeavor than a tax lien foreclosure proceeding. To substantiate that allegation, the plaintiff provided the court with a copy of the October 15, 2012 minutes of the defendant's public safety committee, in which the defendant's town manager, Barbara Gilbert, discussed the problem of blight on the plaintiff's property.[16] The minutes of that meeting state in relevant part: "Chairman Joe Kochanek asked how the [b]light [o]rdinance is coming along. Town Manager Barbara Gilbert said the [b]light [o]rdinance is hers. They have been working with the [t]own [a]ttorney methodically on this by doing one property at a time. Some properties have been identified and the easiest way is to go after these through foreclosure due to the nonpayment of taxes instead of going after them through blight. She explained more."[17] Weeks later, the defendant commenced the tax lien foreclosure action against the plaintiff to collect approximately $4600 he then owed in delinquent property taxes.[18]

On the record before us, and mindful of our obligation to draw all reasonable inferences in favor of the party opposing summary judgment; see *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, supra, 259 Conn. 558; *Walker* v. *Housing Authority*, 148 Conn. App. 591, 601, 85 A.3d 1230 (2014); we conclude that a genuine

issue of material fact exists as to whether the collection of delinquent taxes was the primary purpose of the tax lien foreclosure action. If it credited the substance of the October 15, 2012 minutes of the public safety committee and drew reasonable inferences therefrom, the trier of fact could conclude that the primary purpose of the foreclosure action was not the collection of municipal taxes but, rather, the remediation of blight on the property. Although permitted under other provisions of our General Statutes; see General Statutes § 7-148aa; such is not a proper purpose of the tax lien foreclosure procedure established by § 12-181, particularly when no blight citations had been issued to the plaintiff. A genuine issue of material fact thus exists in the present record, which only a trier of fact can resolve.[19]

That determination does not end our inquiry. As this court has noted, abuse of process is an intentional tort. *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, supra, 157 Conn. App. 190. In count one of his operative complaint, the plaintiff alleged that the defendant, "through its [t]own [m]anager and [a]ttorney," commenced the foreclosure action with "extreme malice, wantonness, and intent to injure the plaintiff . . . ." In responding to that complaint, the defendant raised, among other things, a governmental immunity defense predicated on § 52-557n (a) (2) (A). In moving for summary judgment, the defendant renewed its claim that count one was barred by governmental immunity.[20]

Section 52-557n (a) (2) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct . . . ." As discussed in part I of this opinion, our appellate courts consistently have held that a defendant municipality cannot be held liable for intentional torts committed by its employees in the absence of a statutory abrogation of governmental immunity. See *Pane* v. *Danbury*, supra, 267 Conn. 685–86; *Avoletta* v. *Torrington*, supra, 133 Conn. App. 224; *Martin* v. *Westport*, supra, 108 Conn. App. 729. The plaintiff has not identified any statutory abrogation of the immunity from liability contained in § 52-557n (a) (2) (A) to permit his abuse of process claim against the defendant. See *Avoletta* v. *Torrington*, supra, 133 Conn. App. 221; *Martin* v. *Westport*, supra, 108 Conn. App. 730. Indeed, § 52-557n (b) (5) expressly provides that political subdivisions of the state such as the defendant shall not be liable for an action pertaining to "the initiation of a judicial proceeding," with the exception of vexatious litigation actions commenced pursuant to General Statutes § 52-568.[21] In light of the foregoing, we conclude that the protections of § 52-557n (a) (2) (A) afford the defendant governmental immunity against the plaintiff's

abuse of process claim. For that reason, the trial court properly rendered summary judgment in favor of the defendant on the abuse of process claim contained in count one of the operative complaint.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Specifically, the plaintiff claims that the court (1) abused its discretion in overruling his objection to the defendant's request to revise with respect to a particular statement made by the defendant's attorney, (2) abused its discretion in denying his motion to replead, (3) abused its discretion in deferring consideration of his request to file an amended substitute complaint until after the defendant's motion for summary judgment had been decided, (4) improperly rendered summary judgment on his challenge to the legality of a municipal ordinance concerning the removal of ice and snow from public sidewalks, and (5) improperly rendered summary judgment in favor of the defendant on his illegal search, equal protection, and state constitutional law claims. We carefully have considered those claims in light of the record before us, including the court's thorough memorandum of decision, and conclude that they are without merit.

[2] The plaintiff has not identified that blight ordinance or its contents with any specificity and did not provide the trial court with a copy of that ordinance in either his pleadings or the materials submitted in connection with the motion for summary judgment. In his operative complaint, the plaintiff merely alleged that the defendant "enacted a new blight ordinance"; he likewise testified under oath on April 29, 2015, that the defendant "enacted a blight ordinance in April of 2012."

[3] In his deposition testimony, which the defendant submitted in support of its motion for summary judgment, the plaintiff indicated that he "didn't mind" the grass mowing and the shrubbery removal.

[4] In her sworn affidavit dated June 20, 2017, which was submitted in support of the defendant's motion for summary judgment, Zerio stated in relevant part: "In late August, 2012, I was made aware of a complaint concerning trees, vines and overgrowth at [the property]. I made a decision that three trees at the property were a safety hazard and needed to be cut. There was a dead cherry tree, a maple tree and a dogwood tree. . . . I showed [the plaintiff] the trees that needed to be cut. At no time did [the plaintiff] voice a strong objection to removing the trees . . . ."

[5] While the foreclosure action was pending, the defendant completed its revaluation of all real property in the town for the October 1, 2013 grand list. The defendant's tax assessor notified the plaintiff of an increase in the assessment of the property by letter dated November 19, 2013, and apprised him of his ability to contest that assessment before the defendant's Board of Assessment Appeals. In his complaint, the plaintiff confirms that he brought such an appeal and that the Board of Assessment Appeals thereafter "made the decision to significantly lower [his] assessment . . . ."

[6] The plaintiff previously had been ordered to remove "all inoperable motor vehicles" from the property pursuant to § 234-4 of the code by the defendant's prior zoning enforcement officer, Frank J. Kelley, in August, 2012.

[7] In its memorandum of decision on the motion to strike, the court specifically noted that the plaintiff's July 18, 2016 amended complaint did not include a vexatious litigation count. The operative complaint likewise does not contain a vexatious litigation count, and neither the term "vexatious" nor General Statutes § 52-568, Connecticut's vexatious litigation statute, appears anywhere therein. The plaintiff also has not alleged in the operative complaint that the defendant lacked probable cause to commence the foreclosure action, an essential element of a vexatious litigation action. See *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, 296 Conn. 315, 330, 994 A.2d 153 (2010). For that reason, the plaintiff's reliance on § 52-568 in his principal appellate brief is misplaced.

[8] In March, 2015, the plaintiff received two citations for failing to remove ice and snow from the public sidewalk abutting his property in violation of § 212-21 of the code. Each citation included a fine of $25.

[9] The eight exhibits submitted in support of the defendant's motion for summary judgment were (1) the ninety-three page transcript of the April 29, 2015 trial proceeding in the foreclosure action, (2) the sixty-four page transcript of the plaintiff's deposition dated November 7, 2016, (3) a certified copy of a document titled "Event History Details" that is dated June 10,

2013, and concerns a complaint that the Rocky Hill Police Department received about the property, (4) the sworn affidavit of Dana McGee, the defendant's director of human resources and legal compliance, (5) the sworn affidavit of Ricci, (6) the sworn affidavit of Zerio, (7) an invoice from Timber-Jack Tree Co., LLC, regarding work performed on the property, and (8) a copy of the court's June 30, 2015 memorandum of decision in the foreclosure action.

[10] The plaintiff appended three exhibits to those memoranda: (1) a one page portion of the minutes of the October 15, 2012 meeting of the defendant's public safety committee, (2) an electronic confirmation from the Connecticut Judicial Branch's e-filing service dated April 29, 2015, indicating that the defendant had filed a reply to the plaintiff's special defense in the foreclosure action, and (3) a copy of a release of a tax lien dated October 15, 2012, that the defendant had filed on the land records with respect to the property.

[11] Although both documents are titled "Affidavit of Plaintiff," neither contains any indication that its contents were sworn to by the plaintiff before a clerk, notary public, or commissioner of the Superior Court. See General Statutes § 1-24a (requiring affiant to "swear to the truth of the document or writing before any proper officer"); see also *Burton* v. *Mottolese*, 267 Conn. 1, 46 n.47, 835 A.2d 998 (2003) (noting that "the document filed by the plaintiff was not, in actuality, an affidavit because the contents were not sworn to and did not satisfy the requirements of a proper affidavit"), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d. 983 (2004); *Scinto* v. *Stamm*, 224 Conn. 524, 533, 620 A.2d 99 ("[u]nsworn assertions of fact . . . in an affidavit do not entitle a party to a summary judgment"), cert. denied, 510 U.S. 861, 114 S. Ct. 176, 126 L. Ed. 2d. 136 (1993); *Viola* v. *O'Dell*, 108 Conn. App. 760, 768, 950 A.2d 539 (2008) (holding that unsworn affidavits are "of no evidentiary value" for summary judgment purposes); *Krassner* v. *Ansonia*, 100 Conn. App. 203, 209–10, 917 A.2d 70 (2007) ("[b]ecause the witness statements were not sworn to before an officer authorized to administer oaths, they did not meet the requirements of an affidavit").

[12] In his operative complaint, the plaintiff alleges that the defendant committed multiple intentional torts—namely, intentional infliction of emotional distress, trespass, trespass to chattels, fraudulent misrepresentation, and invasion of privacy.

[13] In his reply brief, the plaintiff argues that "*Avoletta* . . . should be overruled" and that "*Pane* . . . should . . . be partially overruled in matters where the intentional act is performed on the part of the municipality, versus on the part of the employee." That contention is problematic for two reasons. First, this court is not at liberty to overrule the precedent of our Supreme Court; see, e.g., *State* v. *Corver*, 182 Conn. App. 622, 638 n.9, 190 A.3d 941, cert. denied, 330 Conn. 916, 193 A.3d 1211 (2018); and we "cannot overrule a decision made by another panel of this court absent en banc consideration." *State* v. *Joseph B.*, 187 Conn. App. 106, 124 n.13, 201 A.3d 1108, cert. denied, 331 Conn. 908, 202 A.3d 1023 (2019). Second, even if we were not so constrained, the plaintiff has provided no good reason to depart from that sound precedent.

[14] See, e.g., General Statutes § 12-146b (authorizing municipality to withhold payments it otherwise would make to delinquent taxpayer); General Statutes § 12-157 (authorizing municipality to sell property in question by deed sale); General Statutes § 12-162 (authorizing municipality to issue alias tax warrant to seize goods, chattels, and real estate to satisfy delinquent tax obligation).

[15] Indeed, the plaintiff has offered little in the way of documentary evidence to substantiate his opposition to the motion for summary judgment; see footnote 10 of this opinion; and his self-styled "affidavits" do not meet the requirements for such documents under Connecticut law. See footnote 11 of this opinion.

[16] A copy of those minutes was included with the plaintiff's September 25, 2017 opposition to the motion for summary judgment as "Exhibit A." The trial court did not address that exhibit in its memorandum of decision.

[17] Although the defendant submitted affidavits from several of its municipal officials in support of the motion for summary judgment, it did not furnish an affidavit from Gilbert.

[18] In his operative complaint and throughout this litigation, the plaintiff has maintained that his tax delinquency was $4642.24 at the time the foreclosure action commenced. The defendant has not disputed that figure.

[19] We recognize, of course, that the trier of fact also could conclude that the remediation of blight was but an "incidental motive of spite or an ulterior

purpose of benefit to the defendant." (Internal quotation marks omitted.) *Mozzochi* v. *Beck*, supra, 204 Conn. 494. On the evidence submitted by the parties in connection with the motion for summary judgment, that factual dispute nonetheless remains the province of the trier of fact to resolve.

[20] Although the court did not address the defendant's governmental immunity defense with respect to the abuse of process claim contained in count one of the operative complaint, we are free to do so on appeal. See *Skuzinski* v. *Bouchard Fuels, Inc.*, 240 Conn. 694, 702, 694 A.2d 788 (1997) (appellate court "may affirm the court's judgment on a dispositive alternat[ive] ground for which there is support in the trial court record"); *Vollemans* v. *Wallingford*, 103 Conn. App. 188, 219, 928 A.2d 586 (2007) ("[a]lthough the trial court did not rule on those alternat[ive] grounds for summary judgment, it is within our discretion to do so on appeal"), aff'd, 289 Conn. 57, 956 A.2d 579 (2008); *Vaillancourt* v. *Latifi*, 81 Conn. App. 541, 544 n.4, 840 A.2d 1209 (2004) ("[w]e may affirm the [summary] judgment of the court on different grounds").

[21] General Statutes § 52-557n (b) provides in relevant part: "Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from . . . (5) the initiation of a judicial or administrative proceeding, provided that such action is not determined to have been commenced or prosecuted without probable cause or with a malicious intent to vex or trouble, as provided in section 52-568 . . . ." The plaintiff's operative complaint does not contain a vexatious litigation count. See footnote 7 of this opinion.